No. 46,630

THE SEVENTH DAY ADVENTIST KANSAS CONFERENCE ASSOCIATION, a corporation, *Appellee and Cross-Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF DICKINSON COUNTY, KANSAS; MARIE SULLIVAN, COUNTY ASSESSOR OF DICKINSON COUNTY, KANSAS; DOROTHY HABACKER, COUNTY TREASURER OF DICKINSON COUNTY, KANSAS; THE CITY OF ENTERPRISE, KANSAS, *Appellants and Cross-Appellees*.

(508 P. 2d 911)

Opinion filed April 7, 1973.

*D. V. Romine*, City Attorney and *Max M. Hinkle*, of Abilene, argued the cause, and were on the brief for the appellants and cross-appellees.

*James G. Winn*, of Abilene, argued the cause, and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an action for injunctive relief in which plaintiff seeks to enjoin the defendants from levying or collecting ad valorem taxes against certain real estate owned by the plaintiff. The plaintiff further seeks a declaratory judgment that its real estate is used exclusively for educational and religious purposes and is, therefore, exempt from ad valorem taxation. The plaintiff-appellee and cross-appellant Seventh Day Adventist Kansas Conference Association is a nonprofit church oriented corporation. The defendants-appellants and cross-appellees are the Board of County Commissioners of Dickinson County; Marie Sullivan, County Assessor of Dickinson County; Dorothy Habacker, County Treasurer of Dickin-

son County and the City of Enterprise, Kansas. We will refer to the appellee, cross-appellant, in this opinion as the plaintiff or Kansas Conference. We will refer to appellants as defendants or defendant public officials.

The Kansas Conference is the official organization of the Seventh Day Adventist Church and carries on its work in the state of Kansas. It is not maintained for gain or profit but is organized exclusively for religious, benevolent, charitable, educational and scientific purposes. Among its other activities it operates the Enterprise Academy which is a parochial secondary school located at Enterprise, Kansas. 65 similar academies are operated by the Seventh Day Adventist Church throughout the United States. The bulletin of information published by the Enterprise Academy for the school year 1971-72 states that the Enterprise Academy in its present location was established in 1919. Other Seventh Day Adventist schools were in operation in other parts of the state of Kansas prior to the location of the academy in Enterprise. Throughout the years, at various times, the academy has served other states besides Kansas, but presently draws its students primarily from within the Kansas Conference. Essentially the academy is a secondary school operated by the Seventh Day Adventist denomination for its own young people of high school age. Most of the students are members of the Seventh Day Adventist Church although the school is open to nonmembers who wish to comply with the standards of the school. Most of the enrollment is made up of students who live in the dormitory and come from other parts of Kansas. However, there are a number of students who reside in the Enterprise community and attend classes and other events at the academy. In a general way it can be stated that the academy is operated to offer opportunities to young people to develop in three specific areas: physical, mental and spiritual. It is accredited by the state of Kansas as a four-year secondary school. All of its teachers are certified by the state and all are members of the church. Enterprise Academy is financed by the tuition of its students plus a subsidy from the Kansas Conference. It is not economically a self-sustaining institution. The average enrollment at the academy varies from 120 to 130 students. In addition to the secondary school the Kansas Conference maintains an elementary school for the children of the academy staff and members of the church in the area.

All students are required to attend religious courses. In addition all students are required to work a portion of the time in the various de-

partments of the academy or on the academy's farm or at the printing shop or plastic plant which will be more specifically discussed later. The students are not paid cash for their work. For any work performed students accumulate work credits which are paid directly to the academy and are applied to the costs of the individual student's tuition and housing. On occasions cash has been advanced to a student in an emergency situation. Some of the students are employed during the summer. They are not paid cash for summer work but accumulate work credits as they do during the school term. Students are paid at a wage scale which ranges from 65¢ to 85¢ per hour in nonindustrial jobs, $1.40 per hour for work in the print shop and $1.60 per hour in the plastic plant. No academic credit is given to the students for any of the work they perform on the farm or at the printing shop or plastic plant.

The Kansas Conference contends that all of the real estate which it owns in Enterprise, Kansas, is exempt from ad valorem taxation for the reason that it is used exclusively for educational and religious purposes under the provisions of the Constitution of the State of Kansas, Article 11, Section 1, and K. S. A. 79-201. The trial court found certain tracts of real estate to be taxable and other tracts exempt and not taxable. Real estate taxes for the years 1964 through 1969 are involved in this litigation.

In their statement of facts the parties for purposes of clarity have divided the plaintiff's real estate into several categories or classifications. The parties were in complete agreement and stipulated that certain property used in the operation of the Enterprise Academy was exempt from taxation because of its exclusive use for educational purposes. This category includes the school classrooms, the student dormitories and other property related directly to school operations. This real estate is not involved on this appeal. Mention should be made of the fact that following argument of this case on appeal, the parties jointly requested the court to remove from the area of contest a certain tract specified as T-311. In accordance with the agreement of the parties such tract will be considered as in the category of exempt property so long as its present use continues.

The second category of real estate consists of farms which are owned and operated by the Kansas Conference. The administrator of the academy and a designated farm manager are in charge of the farms. About 150 acres of land are owned by the plaintiff and an additional 150 acres are rented. The farms produce beef cattle,

wheat, milo and soybeans. These products are sold on the market and the proceeds are poured back into the farm operation. The academy formerly carried on a dairy operation which was discontinued because it lost money. Some of the farmland is close to the campus and other land is on the other side of town. Some of the farm acreage is idle having been placed under various farm programs. The evidence discloses that the farm has a struggle breaking even. The farm cattle operation involves 75 head of cattle the year around. The academy administrator takes the approach that a farm is a part of the educational involvement of young people in a learning situation. He testified that the reason for having the farms is its value to the students. The students are given responsibility for caring for the livestock. The farm manager testified that he operated the farms using and instructing the young people in the skills of farming. The academy does not have a course in vocational agriculture nor does it employ a certified teacher in that field. There is no regular schedule of instruction in farming nor is there a regular classroom devoted to that purpose. The academy does not have experimental pens or programs involving the cattle. As pointed out heretofore the students are paid 60¢ to 85¢ per hour for their farm work for which they are given work credits. According to the farm manager it is his objective to make the farm show a profit. The accountant for the academy provided financial statements which showed that the farm produced sales in excess of $32,000 for the year ending June 30, 1970, and that the farm made a profit for the year 1970-71 in the amount of $5,332.47. A portion of this profit may have included income from the previous year. The trial court held the farms not to be exempt from taxation. In its cross-appeal the Kansas Conference contends that the trial court erred in its refusal to hold the farmlands exempt from taxation.

The third category of real estate may be referred to as commercial property. This real estate was designated by the parties as tract T-203. This tract consists of two parts—the printing plant and the plastics plant. These operations should be described in some detail. The printing plant operates under the name of Academy Press and is admittedly a commercial venture. Its work product is for commercial acceptance. All work done by the Academy Press is for persons other than the academy. Little printing, if any, is done for the school. The gross sales of the Academy Press increased from about $8,000 in 1964 to more than

$109,000 in 1970. The Academy Press has a manager employed by the Kansas Conference. He is not a certified teacher. The printing plant employs 10 to 15 students each semester. For their work they receive work credits at the rate of $1.40 per hour. The Enterprise Academy has a course in printing which is taught in the administrative building of the school by a certified teacher. The actual teaching of printing is not conducted in the area occupied by the Academy Press. When the printing students acquire a certain proficiency so that they can "pay their way," they may be hired as workers by the Academy Press. In 1969-70 the printing plant employed students who earned work credits in excess of $17,000. This sum was paid directly to the academy for the students' tuition and housing. The Academy Press employs a salesman whose duty it is to solicit private printing business. At the time of the trial the manager of the Academy Press was contemplating an expansion of the printing plant and the purchase of a new press for about $50,000. The trial court held that the land on which the Academy Press was located was not exempt from taxation. The Kansas Conference in its cross-appeal claims that this ruling was erroneous.

The other portion of the property designated as T-203 is leased by the plaintiff to a private business concern known as Midco Plastics. Mr. Powell who operates Midco Plastics is a Seventh Day Adventist. Midco Plastics has been paying rent for the premises it occupies at the rate of $800 per year which was increased to $1200 per year for the year 1971. The plastic plant employs Enterprise Academy students all year around. The students are paid at the rate of $1.60 per hour for which they are given work credits. All of their wages are paid directly to the Enterprise Academy which receives from $12,000 to $15,000 per year from this source in addition to the rental payments. It is undisputed that Midco Plastics is a privately owned enterprise. The plaintiff contends that the students gain great value from this work experience since they are being trained for employment in industry. The trial court held that the plastic plant was not exempt from taxation. This ruling has been appealed by the Kansas Conference and is raised as a point in its cross-appeal.

There is also involved a tract of land which was designated as T-310. This tract was described by the parties as vacant land used as pasture and for parking and is being held by the Enterprise Academy for future use. The trial court held that this tract was

not exempt from taxation, which ruling is questioned in the plaintiff's cross-appeal.

The last category of land consisted of several tracts designated by the parties as teacherages. These are simply residential properties occupied by the teachers and members of the staff of the academy and their families as their homes. It is the policy of the Kansas Conference for teachers and staff members at the Enterprise Academy, as a condition of their employment, to live in housing provided by the academy. These homes are located in the campus area. The staff members and teachers pay 10% of their salaries as rent for this housing. There is no written contract which requires a teacher or staff member to live in the teacherages. The 10% rental figure is a denominational policy. Utility meters are placed in the individual name of the staff member. Each staff member pays the first $150 of his utility bills and utility charges in excess of $150 are shared equally by the individual staff member and the academy. The academy administrator testified that the closeness of the staff members to the student dormitories and campus is important. It is expected of the staff members on infrequent occasions to entertain the young people in their homes. No regular school activities are scheduled to take place in the residences furnished members of the staff. With the exception of the local residents all students are housed in dormitories on the campus. Each of the dormitories has an apartment with a separate entrance which is occupied by a dormitory dean and his family. The dormitory deans are usually teachers and are considered as surrogate parents for the students. The staff members who live in private residences have no assigned duties to supervise the students in the dormitory. Occasionally, they are assigned the duties of general campus supervision. It should be noted that some of the teacherages are rented to persons other than academy teachers. Some of these residences are occupied by a retired teacher, the laundry supervisor, the press manager, the food service director, the printing shop supervisor, and the farm manager. One staff member is living in a house which is rented by the academy from a private owner. The district court held that all of the teacherages are exclusively used by the Kansas Conference for educational and religious purposes and are therefore exempt from taxation. The defendant public officials in their appeal contend that the trial court erred in granting exemptions to these properties.

The Kansas Conference contends that all of its tracts of land are

exempt from ad valorem taxation upon the basis that the properties are used exclusively for educational and religious purposes within the meaning of Article 11, Section 1, of the Constitution of Kansas and K. S. A. 79-201.

Article 11, Section 1, of the Constitution of Kansas provides in part as follows:

". . . All property used exclusively for . . . educational, . . . religious, . . . purposes, . . . shall be exempt from taxation."

The pertinent part of K. S. A. 79-201 is as follows:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation:

. . . . . . . . . . . . .

"*Third.* All real property, and all tangible personal property, actually and regularly used exclusively for . . . educational, . . . religious, . . . purposes: *Provided,* that this exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property held or used as an investment even though the income or rentals received therefrom is used wholly for . . . educational, . . . religious, . . . purposes."

Since the facts in this case are virtually undisputed, this appeal presents pure questions of law as to whether or not the various tracts are entitled to exemption under these constitutional and statutory provisions.

In order to be entitled to an exemption the Kansas Conference has the burden to prove that each tract of land is used exclusively for educational or religious purposes. The parties in this case rely on many Kansas cases which set forth the general principles to be applied in determining whether property is tax exempt for educational, religious, charitable and benevolent purposes. The defendant public officials rely primarily upon *Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344; *St. Mary's College v. Crowl, Treasurer,* &c., 10 Kan. 442; *Stahl v. Educational Assoc'n.,* 54 Kan. 542, 38 Pac. 796; *Kansas Wesleyan Univ. v. Saline County Comm'rs.,* 120 Kan. 496, 243 Pac. 1055; *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 498, 351 P. 2d 19; *Topeka Presbyterian Manor v. Board of County Commissioners,* 195 Kan. 90, 402 P. 2d 802; and *Sigma Alpha Epsilon Fraternal Ass'n v. Board of County Comm'rs,* 207 Kan. 514, 485 P. 2d 1297.

The plaintiff Kansas Conference cites many of these same decisions and in addition relies on *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373; *Trustees of The United Methodist Church v. Cogswell,* 205 Kan. 847, 473 P. 2d 1; *Masonic Home v. Sedgwick*

*County,* 81 Kan. 859, 106 Pac. 1082; and *Clements v. Ljungdahl,* 161 Kan. 274, 167 P. 2d 603. The Kansas Conference also cites a number of decisions of the Supreme Court of Nebraska and other jurisdictions which are set forth in a comprehensive annotation on the subject in 15 A. L. R. 2d 1064. We have considered all of these Kansas cases and our recent decision in *Lutheran Home, Inc., v. Board of County Commissioners,* 211 Kan. 270, 505 P. 2d 1118. We have also taken into consideration the Nebraska decisions and decisions from other states.

In *Lutheran Home, Inc., v. Board of County Commissioners,* supra, we summarized the basic principles of law which are applied in cases of claimed exemption from taxation under the constitutional provision and K. S. A. 79-201. These principles are as follows: The constitutional and statutory provisions exempting property from taxation are to be strictly construed. The burden of establishing exemption from taxation is on the one claiming it. The exemption from taxation depends solely upon the exclusive use of the property and not upon the ownership or the character of the owner. The test of exemption is whether the property is used exclusively to carry out a purpose recognized in law as educational, religious, benevolent or charitable. The question is not whether the property is used partly or even largely for the purposes stated in the exemption provisions, but whether it is used exclusively for those purposes. The phrase, "used exclusively" in the constitution and statute means that the use made of the property sought to be exempted from taxation, must be only, solely and purely for the purposes stated, and without admission to participation in any other use.

These principles of law have generally been accepted and followed in all of our decisions. The major problem presented in this case as in other cases of claimed exemption is whether or not a particular use of property falls within an exempt classification. In the case at bar the exemption is claimed for educational and religious purposes. At the outset it seems obvious to us that there is no rational basis for claiming that any of the tracts of land involved here are used for religious purposes. Any exemption from taxation must be based upon a finding that a tract is used exclusively for educational purposes.

We do not rely upon decisions from other states. Many of those decisions are based upon peculiar constitutional and statutory provisions which are different from the Kansas constitutional and

statutory provisions. Furthermore we find an abundance of author-
ity in the Kansas decisions to determine the issue raised.

In *Washburn College v. Comm'rs of Shawnee Co.*, supra, the
land in question was unoccupied and unimproved, but was intended
to be used in the future as a permanent site for the college. We
denied a tax exemption under a contention that the land was "used
exclusively" for educational purposes. Mr. Justice Brewer in speak-
ing for the court stated:

". . . To bring this property within the terms of the section quoted it
must be 'used exclusively for . . . educational purposes.' This involves
three things, first, that the property is used; second, that it is used for
educational purposes; and third, that it is used for no other purpose . . ."
(p. 349.)

In the syllabus it was said:

"The accumulation of large amounts of untaxed property, by educational,
charitable, religious, and other institutions, is contrary to the fundamental rule
requiring an equal rate of assessment and taxation; . . ." (Syl. ¶ 3.)

In *St. Mary's College v. Crowl, Treasurer, &c.*, supra, the land
claimed to be exempt was farmland owned by the college. It
adjoined the college grounds upon which the college buildings
were located. It was used for the purpose of teaching agriculture
to some 80 Indians under a contract between the college and the
government. All of the products raised on the land were either
used to feed the Indians, employees, and missionaries, or sold to the
public and the proceeds applied for educational purposes. We
denied the claim for exemption. We held that the land was not
used exclusively for educational purposes and was, therefore, not
exempt. Although the property was used partly for purposes of
teaching certain Indians agriculture, we pointed out that it was
also used for the purpose of raising products to sell. Hence the
land was not used exclusively for educational purposes. In regard
to teaching the Indians agriculture we stated as follows:

". . . If the employment of Indians on a farm, and teaching them how
to cultivate it, would exempt all the cultivated land of such farm from taxa-
tion . . . , then every farmer in the state might obtain an Indian (or
indeed he might obtain any other person,) and commence teaching him agri-
culture, and thereby exempt all his property from the burdens of taxation.
And also, by analogy, every blacksmith, or other mechanic, might obtain an
apprentice and teach him his trade, and thereby exempt his shop and tools
from a like burden. And also, every householder might teach his own children
their alphabet, etc., and thereby relieve his homestead from the burdens of
taxation, for his homestead would then of course be used partially for purposes
of education." (p. 452.)

In *Vail v. Beach,* 10 Kan. 214, a dwelling-house in Lawrence owned by the Diocese of the Episcopal Church, and used by the Bishop exclusively as his residence, was held not to be exempt from taxation for religious purposes. We pointed out that the property was used as any other dwelling and the use was not distinguishable from that of the residence of any other christian gentlemen. We thought it clear that this was not the purpose of the constitutional provision to relieve such property from the burden of taxation.

In *Stahl v. Educational Assoc'n.,* supra, the Kansas Educational Association of the Methodist Episcopal Church claimed as exempt from taxation for religious and educational purposes a dwelling-house which was rented to a tenant. The rent was applied to the support and maintenance of Baker University. We held that the exemption from taxation did not extend to property rented to others for purposes of producing income even though the income was used to support a religious or educational purpose.

In *Kansas Wesleyan Univ. v. Saline County Comm'rs,* supra, the university officials claimed as exempt the home of the president of Kansas Wesleyan University which was situated across the street from the campus. The trial court found that the building was used for official meetings, for meetings of members of the faculty with the president, for the assemblage of bodies connected with the university and for official entertainments. Under the peculiar circumstances involved there we held that the building was exempt. We pointed out in the course of the opinion that obviously the occupancy of property as a residence by the president of the school and his family did not in and of itself constitute a use for educational purposes. The holding of the official meetings and school gatherings in the building characterized it as a part of the machinery by which the affairs of the institution were administered. We, therefore, held the use to be clearly educational.

*Kansas State Teachers Ass'n v. Cushman,* supra, involved a claim of exemption for the teacher's association headquarters building in Topeka. We held that the building was not exempt since it was used for purposes of the organization other than educational purposes. We relied upon many of the cases just discussed. *Kansas Wesleyan Univ. v. Saline County Comm'rs,* supra, was distinguished because there the holding of official meetings and school gatherings in the building characterized it as a part of the machinery by which the affairs of the college were administered.

The most recent case involving claimed exemption for educational purposes is *Sigma Alpha Epsilon Fraternal Ass'n v. Board of County Comm'rs,* supra. We hold that college fraternity houses are not exempt from ad valorem taxation. We pointed out that the plaintiffs had not established any fact which tended to distinguish the operation of their fraternity houses from that of any other private owner engaged in the sale of board and room to college students. Hence plaintiffs were not entitled to the exemption claimed. That case is particularly important because we rejected a contention that the words "used exclusively" for educational purposes, means whether the property is "used primarily" for that purpose. We emphasized that the *total* use of the property must be measured and not its primary use in determining qualification for tax exemption.

With these principles in mind we turn to consider the specific tracts which are contended to be exempt from taxation in the case at bar. We have concluded that none of the tracts of land involved in the area of contest on this appeal are exempt from taxation for educational and religious purposes.

The trial court was entirely correct in denying exemption to the various farms owned by the Kansas Conference. The evidence is undisputed that cattle and crops grown on the farms are sold on the market in competition with private farmers. A portion of the farm acreage produces an income from participation in various federal farm programs. The academy does not have a vocational agriculture course nor is there a regular schedule of instruction in farming. *St. Mary's College v. Crowl, Treasurer, &c.,* supra, is clearly in point and leads us to the conclusion that the claimed exemption must be denied.

We likewise hold that the trial court was correct in denying an exemption status to tract T-310 which is vacant land being held by the Enterprise Academy for future use. The situation with respect to tract T-310 is comparable to that in *Washburn College v. Comm'rs of Shawnee Co.,* supra. In our judgment that case is controlling here.

We have no hesitancy in holding that tract T-203 is not exempt. This tract is the land fully described above which is occupied by Academy Press and Midco Plastics, both of which are admittedly commercial ventures in competition with private enterprise. Although income is derived for the support of the Enterprise Academy

from these commercial operations, under our decisions that fact does not justify an exemption from ad valorem taxation. Likewise we cannot accept the plaintiff's contention that the employment of students by a private commercial enterprise can create a tax exemption for educational purposes. ( *St. Mary's College v. Crowl, Treasurer, &c.*, supra. )

There remains finally the question of the tax exempt status of the teacherages or residences which are rented to teachers and members of the staff of the academy as homes for their families. It is undisputed that the teachers and staff members pay 10% of their salaries as rent for these accommodations. They also pay the bulk of the utility bills. Although the teachers on infrequent occasions entertain young people in their homes, no regular school activities are scheduled to take place in the residences furnished them by the academy. Staff members who live in the residences have no assigned duties to supervise the students in the dormitories. Our decisions have adopted the position that the occupancy of property as a residence does not in and of itself constitute a use for educational and religious purposes. ( *Vail v. Beach*, supra; *Kansas Wesleyan Univ. v. Saline County Comm'rs.*, supra.)

Under all the facts and circumstances present in the case at bar we hold that the plaintiff has not sustained its right to an exemption for these residential properties for religious or educational purposes. The situation in *Kansas Wesleyan Univ. v. Saline County Comm'rs.*, supra, is clearly distinguishable. In that case an exemption was granted to property occupied by the president of the university because the nature of the use of the building characterized it as a part of the machinery by which the affairs of the college were administered. In the present case the facts do not justify granting a similar exemption to the residential properties which are rented to the teachers and staff members of the Enterprise Academy.

For the reasons set forth above the judgment of the district court granting an exempt status to the teacherages is reversed on the appeal. The judgment of the district court denying a tax exempt status to the farms, commercial properties, and the vacant property designated as tract T-310 is affirmed on the cross-appeal in accordance with the views expressed in this opinion.