No. 59,837

In the Matter of the Appeal of HORIZON TELE-COMMUNICATIONS, INC., Taxpayer, From an Order of the BOARD OF TAX APPEALS Relating to Assessment of Property for Ad Valorem Tax Purposes, and Consolidated Cases.

(734 P.2d 1168)

Opinion filed March 27, 1987.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the briefs for appellants.

*Carol B. Bonebrake,* of Kansas Department of Revenue, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by twenty cable television companies from an order of the Shawnee County District Court, which affirmed an order of the Kansas Board of Tax Appeals

(BOTA) concerning the valuation of personal property for ad valorem tax purposes for the tax year 1983.

In 1983 the Division of Property Valuation (PVD), a division of the Department of Revenue, devised and implemented a valuation guideline to be used by county appraisers to value for tax purposes personal property held by cable television systems. Prior to 1983, there were no published directives from the PVD concerning proper assessment methods of cable television personal property in Kansas. Cable television property was typically assessed for valuation purposes using straight-line depreciation from original cost, at the rate of 10% per year down to a base of 30% of the original cost as long as the property remained in service. A trended cost method was adopted under the new 1983 guidelines in order to better determine the fair market value of the property as required by K.S.A. 75-5105a(b). The trended cost involves applying an inflation factor to the original cost of the property to establish a replacement cost, and then applying an allowance for depreciation to the trended cost to arrive at fair market value. A "Trending Factor Table" was developed which incorporated two main components; the price trend index and the economic life of the equipment. The first component, the price trend index, was based upon the Consumer Price Index (CPI). Tables were then created based upon an assumption of straight-line depreciation down to a salvage value of 10%. In addition, a 15% reduction from the CPI was made to reflect the difference between retail cost to the owner and the price the owner could obtain upon resale (CPI minus 15%). The second component, the economic life of the equipment, was established for three broad categories of property and was derived from 5 categories used by the Internal Revenue Service. Each category of equipment was assigned a useful life in order to determine an appropriate annual depreciation rate and to select the proper column on the trending factor table. Headend equipment (includes assets such as towers, antennas, preamplifiers, converters, modulation equipment, microwave equipment, and program non-duplicating systems) was assigned a 20-year economic life; subscriber connection and distribution systems (includes assets such as trunk and feeder cables, connecting hardware, amplifiers, power equipment, passive devices, directional taps, pedes-

tals, pressure taps, drop cables, matching transformers, multiple set connector equipment, and converters) was assigned a 15-year economic life; and program origination (includes assets such as cameras, film chains, video tape recorders, lighting, remote location equipment excluding vehicles, and testing equipment tools) was assigned a 7-year economic life.

Following issuance of the valuation guidelines, numerous appeals were filed by various cable television companies throughout the state. The BOTA consolidated the appeals and the matter was tried before it with two taxpayers, The World Company d/b/a Sunflower Cablevision, and Kays, Inc., d/b/a Ellis Cable TV and d/b/a Hays Cable TV presenting the major portion of the taxpayers' evidence. The Kansas CATV Association was permitted to intervene, and the Director of Property Valuation was directed to intervene as a contingently necessary party.

Two issues were asserted before the BOTA; first, the taxpayers alleged the use of the CPI as an index for the trending factor was not appropriate and resulted in overestimating the replacement cost of new cable television equipment; and second, the taxpayers alleged the economic lives assigned to the various categories of property were excessive and dissimilar to the economic life assigned comparable equipment used in other industries.

In its order, the BOTA adopted the PVD's use of the CPI minus 15% as an appropriate index to generate the Trending Factor Table. The BOTA adopted the three property categories established in the new guidelines but modified the economic life assigned to two of those three categories. The economic life of headend equipment was reduced from 20 years to 15 years, and the economic life of subscriber connection and distribution systems was modified from 15 years to 12 years.

After the BOTA denied the taxpayers' motion for rehearing, approximately twenty taxpayers appealed the order of the BOTA to Shawnee County District Court, where it was affirmed. The taxpayers have appealed from the district court ruling. This case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

Appellants' first argument on appeal is that the district court erred in holding that the BOTA made adequate and sufficient

findings of fact as required by K.S.A. 74-2426(a). The statute provides in part:

"Whenever the board of tax appeals enters a final order on any appeal, in any proceeding under the tax protest, tax grievance or tax exemption statutes or in any other original proceeding before the board, the board shall make written findings of fact forming the basis of its determination and final order and the findings shall be made a part of the final order."

It is true that the original order of the BOTA and its subsequent order on rehearing could have been more specific in setting forth the factual basis for its determinations and ultimate conclusions. The orders are quite general in stating the evidence and facts upon which the BOTA relied but scattered throughout are some specific references to the evidence and facts developed in the hearing. It is a general rule of administrative law that an agency must make findings that support its decision, and those findings must be supported by substantial evidence. *Class I Rail Carriers v. State Corporation Commission,* 191 Kan. 201, 208, 380 P.2d 396 (1963). The necessity for findings is to "facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agencies within their jurisdiction as prescribed by the Legislature." *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 744, 433 P.2d 572 (1967).

In *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972), this court addressed the issue of whether an order by the BOTA satisfied K.S.A. 1970 Supp. 74-2426. In analyzing the written findings, this court determined they were mere conclusions which failed to give the basis of the Board's determinations and final order. However, a review of the record indicated there was "nothing mysterious . . . concerning the factual basis for the Board's order." 208 Kan. at 347. Even though the order did not comply with the statutory requirements, the Court, over a vigorous dissent by former Chief Justice Fatzer, did not find the failure fatal to appellate review. After combing the record, the Court determined that the record reflected sufficient evidence to support the order of the BOTA. Here, we are faced with a similar

situation, although the present orders are more informative than the order under review in *Northern Natural Gas Co. v. Dwyer.* In this case, the district court, in its memorandum decision, stated:

"Appellants contend the Board has failed to issue sufficient findings of fact as required by K.S.A. 74-2426 (1985). Although the Board makes no citation to particular passages in the transcript, the order does contain sufficient factual references to support the Board's order. In addition, the record contains sufficient evidence supporting the Board's conclusions."

We agree with the district court. While a more detailed and specific order would have been preferable, the present orders, when considered along with the record, furnish a sufficient basis for meaningful appellate review. ·

Next, the taxpayers assert the district court erred in holding there was substantial competent evidence to support the Board's (1) implied finding that the pre-1983 valuation method did not achieve fair market value, (2) decision to use the PVD's CPI-based trending factors, (3) adoption of the PVD's three economic life categories, the economic life assigned to each category, and modification of the economic life assigned to two of those three categories, and (4) finding that steel towers should be assessed as personal property rather than as real estate.

The scope of judicial review from administrative proceedings has been stated in many cases and is also limited by statute. K.S.A. 74-2426(e), as it existed at the time of these proceedings, provided in part:

"No appeal may be taken from any order pertaining to the assessment of property for ad valorem tax purposes . . . unless . . . the order is unreasonable, arbitrary or capricious."

The general scope of review of administrative proceedings was set forth in the often-cited case of *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968), where we held:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority." Syl. ¶ 1.

While the statute which previously existed limited the scope of

review to a determination of whether the order is unreasonable, arbitrary, or capricious, it is clear that if an order is not supported by evidence or is not within the scope of the tribunal's authority the order would at least be arbitrary, if not fraudulent or capricious.

The first evidentiary issue raised by appellants is that there is not substantial competent evidence to support the implied finding of the BOTA that the pre-1983 valuation method failed to achieve fair market value for cable television property. It appears to be the position of the appellants that once a method of valuation is adopted, it can never be changed without a finding the method is faulty. Appellants cite no law to that effect and our research has disclosed none. Even though an acceptable method of valuation may be in existence, we know of no law that would prohibit a change to an equally appropriate or better method of valuation. In setting forth the position of the PVD, the BOTA stated in its original order:

"The Department points out that prior to 1983 the cable industry's property was assessed by depreciating original cost to a 30% residual value. This methodology was reviewed [by the Department] and it was determined there was a lack of uniformity by the industry in adhering to these general guidelines. The review also indicated that cable companies were treated differently from county to county throughout Kansas. The Department, therefore, issued specific guidelines to achieve fair market value and uniformity."

Article 11, § 1 of the Kansas Constitution provides "[t]he legislature shall provide for a uniform and equal rate of assessment and taxation." K.S.A. 79-501 provides for tangible personal property to be appraised "at its fair market value in money at the place where the same may be held . . . and assessed as required in K.S.A. 79-1439." Pursuant to K.S.A. 79-1439, tangible personal property subject to property tax is to be appraised at its fair market value and assessed at 30% of that value. K.S.A. 79-503a defines "fair market value" as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." K.S.A. 79-503a also lists factors to be considered by the assessor or appraiser in arriving at fair market value.

Here, the taxpayers are concerned about the adoption of new guidelines by the PVD when, they argue, the old guidelines were fine. K.S.A. 75-5105a sets forth the powers and duties of the Director of Property Valuation and provides, in part, that the Director shall:

"(b) Devise and/or prescribe guides showing fair market value in money of personal property. The director of property valuation shall furnish to each county one copy of each guide so prescribed and a copy or copies, at said director's discretion, of each guide so devised. In the preparation of such guides, the director of property valuation shall confer with representatives of the county appraisers and district appraisers, and shall seek counsel from official represent- atives of organized groups interested in and familiar with the value of classes of property with which they are concerned."

At the hearing before the BOTA, Henry Kingman, an appraiser with the PVD, testified they had experienced a number of cases, under the old appraisal system for cable TV systems, where the depreciated historical cost did not approximate market value. John Cooper, Supervisor of the PVD, testified it was not a policy of the PVD to allow original cost and straight-line depreciation. He also testified cable television property was the only property in the State being assessed and appraised for ad valorem taxation on the basis of original cost less straight-line depreciation to a 30% bottom; however, subsequent testimony indicated there were other exceptions. Mr. Cooper testified straight-line depre- ciation is keyed to a physical life and would not reflect functional or economic obsolescence of the asset. One of the reasons given by Mr. Cooper for changing the guidelines was that cable tele- vision companies did not follow the guidelines and did not stop at 30% of the original cost but kept on reducing book values until the property was written off the tax rolls completely.

The taxpayers' argument is not persuasive. The real question before the BOTA was whether the new guidelines established a fair market value for tangible personal property of cable televi- sion companies, and not whether the old guidelines failed to do so. In any event, there was testimony before the BOTA that the old system did not arrive at fair market value for cable television system equipment. No error is shown on this point.

Next, the taxpayers assert the district court erred in finding there was substantial competent evidence supporting the

Board's decision to use the PVD's CPI-based trending factors for valuing cable television personal property.

The CPI is compiled and published monthly by the Bureau of Labor Statistics. It is the name typically applied to the statistic that measures changes in prices of a large number of goods purchased by a theoretical family of four consisting of two adults, a fifteen-year-old girl, and an eight-year-old boy. Seven major categories are included in the CPI: food and beverage, housing, apparel, transportation, medical care, entertainment, and other, with housing making up the largest component. Appellants contend that use of the CPI does not reflect a proper trend index to use for their property because the components of the CPI bear no reasonable relationship to cable television property. It must be conceded that the original order of BOTA and the order on rehearing, which sought to clarify the initial order, are confusing in several respects, particularly as they apply to the adoption of an appropriate trending index.

At this point we note that the ideal method of valuation would be for each individual item of personal property to be separately examined and valued according to its actual physical condition and the prevailing market price for a similar item in similar condition. It is obvious that such a system would be totally impractical and expensive to the point of being confiscatory and self-defeating. Some appropriate method of mass valuation must be utilized even though individual inequities will result. The adoption of trending indices and their application to broad categories of property is an appropriate method of valuation so long as the results reasonably approach fair market value and the constitutional requirement of a "uniform and equal rate of assessment and taxation."

In addition to the testimony concerning the use of the CPI, there was considerable testimony about two other indices. The Producer Price Index (PPI) measures changes in price a producer would be experiencing as opposed to a consumer under the CPI. The three major components of the PPI are finished goods, intermediate goods, and crude materials. Within the PPI is a sub-index called the Capitol Equipment Index for non-manufacturing industries. A third approach would be to adopt an industry specific index such as the Standard Industrial Classifi-

cation Code 3674 (SIC 3674), which details equipment such as semiconductors and related devices, many of which may be used by the cable television industry. The major portion of the testimony before the BOTA concerned the application of the CPI, the PPI, and the SIC 3674 to cable television property.

In considering the various indices, the BOTA stated:

"11.   The first issue to be determined is the appropriate index by which the trending factors are derived. Testimony presented by Clark, McEvoy, and Morse [representatives of the cable television industry] indicates that actual prices of some cable TV equipment have remained relatively flat for several years. Other costs associated with the cable television companies have risen greatly. The methodology available to the Board requires the selection of an appropriate index upon which to develop the trending factors. Evidence supplied by both parties failed to establish that any specific index now developed could be accepted as the appropriate index for this type of property. Taxpayers have requested that the Board change the base index upon which the trending factors are developed and establish new guidelines. While the Board concurs that it is within its power to establish new guidelines, the Board does not find sufficient evidence in the record to justify a complete divergence from the Department's original Guide. However, the evidence does substantiate a deviation for tax years 1983 and 1984.

"The Board has carefully considered the issue of what index is most appropriate to develop the trending factor tables. Testimony indicated that the Producer's Price Index, (hereinafter PPI), and the CPI have increased at basically the same rate, so there would be no advantage to utilizing the PPI rather than the CPI. There was voluminous testimony with respect to industry specific indexes such as SIC Codes, (Standard Industrial Classification), as well as component indices within the PPI, such as the Capitol Equipment Index. The Department's expert witness, Dr. Darwin Daicoff, rejected using the CPI, on 'conceptual' grounds, because it measures the wrong kind of material. 'Conceptually,' he favors the PPI, and more specifically, the Capitol Equipment Index for non-manufacturing industries because that index more appropriately addresses the type of property owned by the taxpayers. As to the SIC Codes, Dr. Daicoff rejects utilization of these codes for two basic reasons; first, the types of goods that are in any SIC Classification are too broad, and secondly, the SIC Codes are addressing the price changes in the component parts, not the final product. While evidence introduced would substantiate that the individual components, e.g., semiconductors, have remained constant or decreased in cost over the last several years, other facets of the aggregate manufacturing costs have increased, e.g., wages, at approximately the same rate as the CPI. Thus, based upon the testimony of the Department's and the taxpayers' expert witnesses, it is apparent that an individual index designed to gauge the fluctuation in prices as to a particular product may in fact result in a more appropriate base upon which to derive fair market value as compared to a

general index; however, that, in and of itself, is not sufficient evidence that a general index is inappropriate and does not reach fair market value. Testimony indicated that some prices of taxpayers' equipment have remained flat or decreased over the last several years, while the CPI, and for that matter, the PPI, have increased. It should be noted that for any general index to increase, some of the sub-indices within that general index must also have increased, and thus, it is inappropriate to simply look at only those sub-indices which have not increased to support one's conclusions of value.

"Kansas utilizes a mass appraisal approach to valuing property, and therefore, the Board has determined it is more appropriate to rely on a general index. In so doing, there may in fact be a difference in the valuation of various types of property with the use of general indexes because the price trends of that particular piece of property did not follow the general index. That alone does not invalidate the use of a general index. On the whole, the use of a general index is the best guide to fair market value for an entire class of property. The evidence submitted in the instant case was very limited in terms of the applicability of a specific component index as to a broad class of property. The Board is, therefore, left with no alternative but to determine what is an appropriate index to generate the trending factor. Since the Board has rejected the use of individual component indices, because they don't reflect price changes of the final product at issue, but instead, address component parts, and no testimony has been given that there is a more appropriate general index, the Board will adopt the Department's use of the CPI (minus 15%) as the appropriate index to generate the trending factor tables. In the Board's judgment, this is the most appropriate index to be utilized in valuing the taxpayers' equipment for tax years 1983 and 1984."

In the order denying the taxpayer's motion for rehearing, the BOTA stated:

"The taxpayers assert that 'There is a total absence of evidence in the record supporting the Board's finding that the Consumer Price Index (hereinafter CPI) is the most appropriate index to be utilized in valuing cable television equipment.' The Board specifically considered the testimony of Dr. Darwin Daicoff, noting that he rejected using the CPI on 'conceptual grounds,' because it measures the wrong kind of material. In other words, it measures the increase or decrease in the price of property other than that owned by the taxpayers. Be that [as] it may, he did not indicate that the CPI, because it measures the 'wrong kind of property' did not achieve fair market value. Dr. Daicoff testified that he preferred the Producer's Price Index (hereinafter PPI) and more specifically, the Capitol Equipment Index for non-manufacturing industries, which is within the PPI, because it more appropriately addresses the type of property owned by cable television companies. However, he noted that you cannot use component indices to measure the fluctuation in prices of an end product because there are other factors to consider besides the actual price change in the component itself. Furthermore, the Board notes that the taxpayers are raising an objection to the use of the CPI when it would be more appropriate to address the index

specifically adopted by PVD and the Board, that being the CPI minus 15%. The 15% reduction in the CPI was included, in part, to account for the differences between the taxpayers' property and that included in the CPI. Finally, the Board would note that the taxpayers should not be able to suggest an index which is most favorable to their position of value, nor should the State be able to select an index that is most favorable to their position, because the purpose and goal in the valuation process is to select an index that achieves fair market value. When all of the factors presented are taken into account, the CPI minus 15% is the index which most closely achieves fair market value of property in Kansas, for which the 1983 trending factor guidelines were promulgated to value."

While use of the CPI may be far from a perfect method of achieving fair market value, we cannot say on this record that its acceptance by the BOTA is fraudulent, arbitrary, or capricious. It does not matter whether this Court would have reached the same decision if it had the task of determining an appropriate methodology in the first instance. For this court to find a lack of substantial evidence to support the BOTA action in adopting the CPI minus 15% index, the decision must be "so wide of the mark as to be outside the realm of fair debate." *Central Kansas Power Co. v. State Corporation Commission,* 221 Kan. 505, 512, 561 P.2d 779 (1977).

The district court in the instant case stated:

"The testimony of Professor Darwin Daicoff alone provides substantial evidence to support the Board's order. As a result, the Court would have to reweigh the evidence in order to reverse the Board's decision. Such an inquiry is outside the scope of this Court's review and hence would be improper."

We agree with the district court that the adoption of the CPI minus 15% as an index for the valuation of cable television personal property for the year 1983 is supported by substantial evidence.

Next, appellants assert that there was not sufficient evidence to support the adoption by BOTA of the three broad general categories of cable television property, *i.e.,* headend equipment, subscriber connection and distribution systems, and program origination equipment, or to support the useful life the BOTA assigned to each category of property.

Henry Kingman testified he used an Internal Revenue Service guideline as a tool to group pieces of equipment together in order to aid the local appraisers. The IRS guideline used, 72-10, is for the write-off of equipment by use of accelerated deprecia-

tion under the provisions of the Internal Revenue Code. The IRS guideline divides the personal property into five general categories: headend, subscriber connection and distribution systems, program origination, service and test, and microwave systems. Mr. Kingman testified he consolidated the five categories into three. The microwave system was included with the headend equipment and the service and test equipment was included with the program origination equipment. The taxpayers did present testimony challenging the economic life assigned to each of the three categories. However, no evidence was presented challenging the equipment grouped together under each category. Accordingly, the district court did not err in finding there was substantial evidence to support the adoption by the PVD of the three categories of equipment.

Next, the taxpayers challenge the economic life applied to each of the three categories of property by the PVD and the subsequent reduction of two of them by the BOTA. The PVD adopted a useful life for headend equipment of 20 years, 15 years for subscriber connection and distribution systems, and 7 years for program origination. The BOTA reduced the economic life of headend equipment to 15 years, and that of subscriber connection and distribution systems to 12 years. It adopted the 7-year economic life recommended by the PVD for program origination equipment. The appellants contend the economic life adopted for each category is excessive and not supported by the evidence. Witnesses for the appellants testified that the useful life of certain components of each category was substantially less than that established by the PVD and less than that finally approved by the BOTA. However, on cross-examination it was conceded that some of the components had a useful life as long as or longer than those assigned by the PVD and the BOTA. Without going into detail, it appears to us that the ultimate economic or useful life established by the BOTA for each category of property is supported by the evidence and within the range of the testimony. Therefore, no error is shown.

Finally, the taxpayers argue the district court erred in finding there was substantial evidence to support the Board's finding that steel towers owned by cable television companies should be assessed as personal property rather than as real estate.

The initial order of the BOTA makes no reference to this issue. However, in the order denying the taxpayers' motion for rehearing the Board stated the following:

"The taxpayers allege that there is 'A total absence of evidence in the record supporting the Board's finding that towers are properly classified as personal property when owned by cable television companies.' While evidence may have been presented that would establish towers utilized by cable television companies are identical in construction and installation to those utilized by radio and television broadcasting companies, absolutely no evidence was presented, nor did the Board address, whether towers should be considered as real estate versus personal property. The taxpayers simply requested that they be treated similarly, with respect to the valuation of towers, as radio and television companies. Additionally, while there was a request for an 'equalization' with respect to the valuation of towers owned by various companies, no evidence was introduced into the record to establish that the towers owned by radio and TV companies are correctly valued, in general, or more properly valued as real estate versus personal property or vice versa. While evidence was presented that the construction of the towers is similar, no issue was raised as to the comparability for valuation purposes. The Board, however, would note that PVD should clarify in its 1985 guidelines how towers should be classified, in other words, as real estate or personal property, as well as any distinctions between towers that might be used by similar but non-comparable industries."

A review of the record indicates it wasn't until closing arguments that the taxpayers first raised the issue of the treatment of towers as real estate or personal property. No evidence was presented before the BOTA that radio towers in Douglas County were taxed as real estate while cable television towers were taxed as personal property and therefore this court cannot consider the issue on appeal. The issue of whether towers should be assessed as personal or real property was never directly presented to or determined by the BOTA.

The judgment of the district court is affirmed.