(799 P.2d 505)
No. 64,839

IN THE MATTER OF THE APPLICATION OF THE BOARD OF PARK
COMMISSIONERS OF THE CITY OF WICHITA, KANSAS, FOR EX-
EMPTION FROM AD VALOREM TAXATION IN SEDGWICK COUNTY,
KANSAS.

Opinion
filed October 12, 1990.

*Joe Allen Lang,* senior assistant city attorney, and *Thomas R. Powell,* city attorney, for appellant Board of Park Commissioners of the City of Wichita.

*John C. Roberts,* assistant county counselor, for appellee Sedgwick County Board of County Commissioners.

Before LEWIS, P.J., LARSON and RULON, JJ.

RULON, J.: The Board of Park Commissioners of the applicant City of Wichita (City) appeals from a decision of the district court affirming the decision of the Board of Tax Appeals (BOTA), which denied ad valorem tax exemptions to the City concerning certain park property.

Essentially we have three issues to consider: (1) Whether BOTA had jurisdiction to revoke the City's exemption as to certain park property; (2) whether BOTA's corrected order on rehearing was supported by substantial evidence and not arbitrary; and (3) whether certain *ex parte* communications between the Sedgwick

County appraiser and BOTA prejudiced the City. We affirm in part, reverse in part, and remand with directions.

### PROCEDURAL AND FACTUAL HISTORY

This appeal concerns two parcels of land: horse stables and a residence. The facts are not generally in dispute.

The first parcel of real property, referred to as "the stables," is real property approximately a quarter-section in size. The stables were built between 1977 and 1980 and have since operated under various arrangements. The stables property had previously been exempted from ad valorem taxation under BOTA Order No. 787-1, April 7, 1971. The City leased the stables to Bobbi Reichert on May 12, 1986. In the stables lease, the City named this property the Pawnee Prairie Park Riding Stables, referring to it as the "facility." Pawnee Prairie Park is a large regional park (625 acres) consisting primarily of natural area and is made available to the public through a system of pedestrian and equestrian trails. The Park is immediately adjacent to Wichita Mid-Continent Airport. The stables consist of a barn, pens, arena, farm ground, and hay meadow, along with equestrian trails, wilderness areas, and public picnic areas which make up about one-sixth of the total park area. The real property comprising the stables was described by metes and bounds and was identified as the facility to be leased to Bobbi Reichert in the May 12, 1986, lease.

There is a dispute between the parties concerning the legal sufficiency of this description. The Board of Sedgwick County Commissioners (County), respondent, argues the property was "fully legally described by metes and bounds . . . such legal description being an attachment and part of the lease agreement." The City contends

"[t]he property subject to the Stables lease is not entirely the same as D-423-UP, the property identified by the BOTA Order. [D-423-UP is a County tax key number identifying a 151-acre tract within Pawnee Prairie Park.] Pawnee Prairie Park is 625 acres, the Stables are 109.5 acres. . . .

. . . .

"[T]he precise parcel of land [the stables] that is the subject of this appeal has never been determined."

The lease agreement between the City and Bobbi Reichert provided the facility was to be used to provide the public with riding stables that would include services such as the boarding

of horses; providing horses for riding lessons; conducting fun shows, horse shows, junior rodeos, riding instruction, trail rides, and cookouts; and rehabilitating individuals with mental and physical disabilities. The facility was to be open to the public from sunrise to sunset seven days a week. Under the terms of the lease, Bobbi Reichert was to pay one dollar per year as rent and pay the operation's expenses out of the revenues from the facility. Reichert had the right to mow and bale any hay growing on the property.

Reichert boarded her own horses and those of private individuals on the property. There were no city-owned horses involved in the operation. She used her own horses for teaching and rehabilitative purposes, and leased them to customers for trail rides. Reichert boarded privately owned horses, charging between $78 and $140 per month. Reichert was not paid to operate the stable, but was allowed to keep the fees for boarding the horses, with the potential for profit, even though there was no showing of profit from the stables.

Approximately six weeks after the City and Bobbi Reichert entered into the lease on the stables, they entered into a lease on the residence. The residence lease states that it is necessary that "LESSEE reside near, on, or adjacent to" the stables. The Wichita Airport Authority (WAA) owned the residence and had leased it to the City on June 23, 1986. The City had previously deeded the property to WAA on August 23, 1976.

On the same date WAA leased the property to the City, the City leased it to Bobbi Reichert. This sublease agreement locates the residence just south of and adjacent to the riding stables facility owned by the City. Under the sublease, Reichert was responsible for paying utilities, repairing any damage above normal wear and tear, paying any taxes which may have become a lien on the property, and carrying and maintaining appropriate insurance as required by the lessor. Reichert waived any and all rights of recovery against the City for or arising out of damages to or destruction of any of her property.

The stables operation ultimately was unsuccesful for a number of reasons. Both leases were terminated in early 1988, and the residence was returned to WAA. The City resumed direct control of the stables. On September 10, 1986, the City filed an appli-

cation with BOTA for ad valorem tax exemption on the residence. The stables were not listed on the application for exemption. The residence was described by metes and bounds, situated at 2655 S. Tyler Road in Wichita, Kansas. A hand-written key number of D-425-UP appeared on the face of the application where the form requests specific description of the property to be exempted. After the City submitted its application for exemption, the County Appraiser recommended the exemption be granted. On October 28, 1987, BOTA, in docket No. 4551-86-TX, denied the application, finding the subject matter of the application, the residence, to be nonexempt. BOTA stated it found neither statutory nor case law authority for exempting residences owned by municipalities. BOTA further found that the City had presented no evidence supporting the use of the residence as a recognized governmental or proprietary function.

The City filed a Motion for Rehearing. BOTA granted the motion and a rehearing was held. Additional evidence was presented and entered into the record. BOTA issued an Order on Rehearing which reaffirmed its original determination and revoked the stables' exemption. A corrected Order on Rehearing was issued to include the County tax key number of the stables, D-423-UP. The City then filed this appeal.

## JURISDICTION

The City contends BOTA had no jurisdiction to expand its Order on Rehearing beyond the property listed on the application for exemption: the residence. The Order on Rehearing not only denied exemption for the residence, but also revoked the existing exemption for the stables. The City contends further that BOTA's revocation of the stables exemption denied the City notice and an opportunity for hearing as required by the Kansas Administrative Procedure Act.

The County contends that although there is no specific statutory authority for the review of an exemption from ad valorem taxation except for the property for which the exemption is sought, the City inextricably tied the proposed exemption of the residence to the stables. The County contends BOTA had the authority to revoke the stables' exemption because the two properties were discussed at the hearing on the application.

In reviewing BOTA's actions on appeal, this court has the power to determine whether, as a matter of law, BOTA acted within the scope of its authority. *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 197, 734 P.2d 1168 (1987). Additionally, this court's recent decision in *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988), sheds some light on this issue.

"BOTA is the paramount taxing authority in the state. [Citation omitted.] BOTA is a creature of the legislature, however, and it has only the power given it, expressly or impliedly, by the legislature. [Citation omitted.] BOTA has no general or common law power—only statutory power. [Citation omitted.] If BOTA 'attempts to exercise jurisdiction over a subject matter not conferred by the legislature, its orders with respect thereto are without authority of law and void.' [Citation omitted.]

"Broadly, BOTA's statutory authority includes the power to hear appeals from the director of property valuation and the director of taxation (K.S.A. 74-2437); to act as the State Board of Equalization (K.S.A. 74-2439); to hear and decide applications for refund of protested taxes (K.S.A. 74-2439); and to review taxpayer's applications for property exemption from taxation (K.S.A. 1987 Supp. 79-213). Nothing in these or any other statutes gives BOTA the express or implied power to order a county appraiser to investigate property which is not the subject of a controversy brought before BOTA." 13 Kan. App. 2d at 87.

The *Salina Airport* court stated that the authority to investigate the taxability of specific property lies with other governmental agencies, not with BOTA. For example, "[c]ounty appraisers have the power to investigate, identify, list, and value property not listed, or which they believe is not adequately listed. K.S.A. 79-1461." 13 Kan. App. 2d at 87 (emphasis added).

K.S.A. 79-1461 states in part: "[I]f the county appraiser shall be of the opinion that any form filed is not adequate or does not truly represent the property to be appraised, the county appraiser shall investigate, identify, list and value such property." "The director of property valuation (DPV), not BOTA, has general supervision of the county assessors in the performance of their duties." 13 Kan. App. 2d at 87.

Here, the City filed for tax exemption under K.S.A. 79-213. The application identified the property for which exemption was sought as D-425-UP, and attachment A described the residence.

No statute, expressly or impliedly, gives BOTA power to investigate property which is not the subject of a dispute before it. We conclude the two parcels are not so intertwined as to constitute one subject of dispute, and therefore BOTA had no jurisdiction to revoke the stables exemption.

In light of the above, the following portions of this opinion are concerned only with the property designated as the residence.

## BOTA'S ORDER ON REHEARING

The City contends BOTA's final order was arbitrary or, in the alternative, not supported by substantial evidence. We shall discuss each contention separately.

The Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-621(c), provides:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The Kansas Supreme Court has held that "[a]rbitrary or capricious conduct may be shown where an administrative order is not supported by substantial evidence." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989). "[I]t is clear that if an order is not supported by evidence or is not within the scope of the tribunal's authority the order would at least be arbitrary, if not fraudulent or capricious." *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. at 198. The court has defined "substantial evidence" as "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." *Kansas Racing Management*, 244 Kan. at 365.

### A. Arbitrary

The City contends the residence qualifies for an ad valorem tax exemption pursuant to K.S.A. 79-201a *Second*, which reads in part:

"The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the State of Kansas:

"Second. All property used exclusively by the state or any municipality or political subdivision of the state. All property owned . . . or operated by the state or any municipality or political subdivision of the state which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the state, municipality or political subdivision for the purposes of this section."

The County contends the residence does not meet the "exclusive use" test for purposes of K.S.A. 79-201a Second as stated by the Kansas Supreme Court. This issue turns on whether the property was used for governmental or proprietary functions.

Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. "Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citation omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption." Tri-County Public Airport Auth. v. Board of Morris County Comm'rs, 245 Kan. 301, 304, 777 P.2d 843 (1989). The party claiming exemption "must bring himself clearly within the exemption." The court further noted, however, strict construction "does not warrant unreasonable construction." 245 Kan. at 305. This court has recently ruled that under the Kansas Constitution, article 11, Section 1, all property used for governmental purposes is exempt from taxation. "This exemption depends solely upon the exclusive use made of the property . . . and not on the character of the owner." Salina Airport Authority v. Board of Tax Appeals, 13 Kan. App. 2d at 83.

In tort liability cases, courts have characterized actions of municipalities as either governmental or proprietary. Krantz v. City of Hutchinson, et al., 165 Kan. 449, 454, 196 P.2d 227 (1948). In its governmental capacity, the municipality exercises its powers of sovereignty acting for the general public good and the municipality receives no compensation or particular benefit. Governmental functions include protecting the public against crime, the exercise of eminent domain, and tax collection. 165 Kan. at

454. All non governmental functions of a municipality are proprietary. These are functions which directly and specifically benefit the particular municipality. 165 Kan. at 455.

We conclude BOTA followed established Kansas case law in denying the City's application for exemption. The Kansas Supreme Court has held the term "used exclusively," found in K.S.A. 79-201a *Second*, "means that the use made of the property sought to be exempted from taxation, must be only, solely and purely for the purposes stated, and without participation in any other use." *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683, Syl. ¶ 2, 508 P.2d 911 (1973). *Seventh Day Adventist* concerned the tax-exempt status of residences rented to teachers in the campus area of the Kansas Conference Association. The teachers paid the bulk of the utility bills and 10 percent of their salaries as rent. Tax exemption of the residences was denied. 211 Kan. at 694. Similarly, in the instant case, Reichert paid all utility bills and $300 per month rent.

*Seventh Day Adventist* is but one in a series of holdings denying tax exemption to residences. In *Vail v. Beach*, 10 Kan. *214 (1872), a dwelling house in Lawrence owned by the Diocese of the Episcopal Church and used by the Bishop as his residence was held not to be exempt from taxation for religious purposes. The court noted the property was used like any other residence. 10 Kan. at *216.

This court denied the exemption of a caretaker's residence owned by the District Advisory Board, Church of the Nazarene, in *Kansas City Dist. Advisory Bd. v. Board of Johnson County Comm'rs*, 5 Kan. App. 2d 538, 542, 620 P.2d 344 (1980), noting there was no evidence the residence was used in any way other than as a residence. In the instant case, there is similar evidence that Reichert used the house as her residence. Although the proximity of the residence to the stables undoubtedly facilitated Reichert's work at the park, clearly she lived in the residence and took her meals, bathed, and engaged in other purely domestic activities at the residence. BOTA's denial of tax exemption was proper and not arbitrary.

## B. Substantial Evidence

We are further persuaded that BOTA's Order on Rehearing regarding the residence is based on substantial competent evi-

dence. The record of the administrative proceedings is centered on the use of the residence. Indeed, the residence is the only parcel listed on the City's application. The residence was the primary topic covered during the February 22, 1988, hearing. The sublease of the residence to Reichert was discussed at some length.

In the Order on Rehearing, BOTA set out a summary of the findings that related to its decision. These findings regarding the residence are supported by substantial evidence. Additionally, these findings are more detailed than those dealt with in *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193. In upholding a BOTA order, the court stated: "The orders are quite general in stating the evidence and facts upon which the BOTA relied but scattered throughout are some specific references to the evidence and facts developed in the hearing." 241 Kan. at 196. In the instant case, BOTA's order is more substantial than a mere scattering of references to evidence concerning the residence.

## EX PARTE COMMUNICATIONS

Finally, the City contends that *ex parte* communications between the County and BOTA substantially affected the BOTA order and the rights of the City. The *ex parte* communication referred to is a December 14, 1988, letter from the County Appraiser's Office to BOTA which contains a request to reference D-423-UP in the Order.

The County contends the letter complained of was delivered after the proceeding had concluded and after the Order on Rehearing had been issued.

The district court held:

"8. Petitioner argues that ex-parte communications between the County and BOTA were improper mandating the Order and Corrected Order of BOTA be set aside. The Court finds the communications between the County and BOTA were for the purpose of clarifying certain matters in property descriptions and concludes they were entirely appropriate, not substantially affecting the BOTA findings and decision in its Order and Corrected Order."

Under the Kansas Administrative Procedure Act, no person who has a direct or indirect interest in the outcome of a proceeding may "directly or indirectly communicate in connection with any issue in that proceeding, while the proceeding is pend-

ing, with any person serving as presiding officer unless notice and an opportunity are given all parties to participate in the communication." K.S.A. 77-525(c). However, here the communication complained of was delivered after the termination of the proceeding. BOTA issued its original order on October 28, 1987. There was no hearing prior to the issuance of the order because the City had not requested a hearing.

BOTA issued its original order concerning the property described in Exhibit A of the Park Board's application. Exhibit A is a diagrammed sketch of property described as 2655 S. Tyler Road (the residence), also described by metes and bounds. There is no key number identification on the exhibit and none in the order. "D-425-UP" is hand-written on the application submitted by the City.

On December 1, 1987, the City requested a rehearing, asking that it be allowed to present additional evidence. BOTA ordered a hearing which was to be held on February 22, 1988.

On February 12, 1988, the City's counsel wrote a letter to the Sedgwick County Appraiser. The City's counsel attempted to clarify the legal description of key number D-425-UP. The hearing transcript of February 22, 1988, reflects considerable confusion as to the exact identity and location of the property described in the City's application.

On April 12, 1988, Vic Casper, an appraiser with the Sedgwick County Appraiser's Office who appeared at the hearing, wrote a letter to David Cunningham of BOTA. Casper explained that the parcel identified in the City's Exhibit A had a legal description that was only a portion of key number D-425-UP. Consequently, the portion represented by Exhibit A (the residence) should be assigned a different key number. Casper explained in the letter that each parcel of land in the county is assigned a unique tax key number. For taxation purposes, the portion split from an original piece of land is given the same tax key number, but new digits are added to distinguish the portion from the original whole.

The November 30, 1988, Order on Rehearing described the property as "Approximate point 52 acre tract site within Airport Tract No. 68 (Tax Key No. D-425-UP) as described in the affidavit of Gordon Abernathy." In that same Order, BOTA revoked the stables tax exemption.

Specifically, the communication complained of is a letter from Kay Larkin of the Sedgwick County Appraiser's Office to David Cunningham of BOTA. This correspondence was written on December 14, 1988, some two weeks after the November 30, 1988, Order on Rehearing. In the letter, Larkin requested a corrected order to include key number D-423-UP which included the stables. Larkin included copies of property record cards which more completely described the stables and residence. Clearly this information was used for clarification only.

We affirm the revocation of the tax exemption as to the property designated as "the residence," but reverse as to the revocation of the property designated as "the stables." The case is remanded with directions to reinstate the tax exemption for the property designated as "the stables."