No. 44,487

John B. Lees, Administrator of the Estate of Clifford Leroy Lees, Deceased, *Appellee,* v. John W. White, d/b/a Mack's Truck Service of Pratt and Great Bend and Employers Mutual Casualty Company, *Appellants.*

(415 P. 2d 272)

Opinion filed June 11, 1966.

*James Berglund,* Great Bend, argued the cause and *H. Lee Turner* and *J. Eugene Balloun,* of Great Bend, were with him on the briefs for appellants.

*Bill Murray,* of Pratt, argued the cause, and *B. V. Hampton* and *Bill Hampton, Jr.,* of Pratt, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: In this workmen's compensation case the employer and its insurance carrier have appealed from the judgment of the district court awarding compensation under the Workmen's Compensation Act. Clifford Lees died as the result of injuries received on June 11, 1963, and the claimants are John B. Lees and Huldah Lees, his parents who were in part dependent upon his earnings. The principal question presented is the degree of dependency of the parents.

The parties stipulated to the usual preliminary features of a compensation case such as employment, being under the Act, notice of the accident, demand for compensation, and that Clifford's average

weekly wage was $73.90. Further, that the accident arose out of and in the course of the decedent's employment and death resulted from personal injuries by accident on June 11, 1963; that the claimants, John B. Lees, age 73, and Huldah Ann Lees, age 51, are the natural parents of the decedent who was their only child, and that Clifford was under 25 years of age at the time of his death, was not married, had never been married, and had no children either natural or adopted.

In November of 1960, Huldah and John Lees went to live with Clifford in a trailer house near Pratt, Kansas, which he had recently purchased. Some two or three months after moving to Pratt, John and Huldah traded their home in Cullison, Kansas, for a filling station operation in Pratt. At the time of the trade, John and Huldah were indebted to Clifford for approximately $800, and they made the trade to repay him. The reason for the move is explained· by Huldah's testimony as follows:

"The welfare cut me off his check and I am a diabetic and I have to have my medicine whether or not, and I had to move in town to get work where I could have my medicine. You try to go without medicine and you wouldn't go long. The kid got a trailer house and we moved in with him. The kid had to support us and I wasn't going to put up with it and I told that guy at Topeka that that is the reason I went to work."

The filling station operation was owned by Huldah and Clifford on a 50-50 basis. Huldah's contribution was the equity in the home in Cullison and Clifford's contribution was the cancellation of his parents' indebtedness. John operated the filling station but received no salary. The filling station made no money and finally went broke. Being unable to secure employment, John received Social Security benefits of $40 per month. Due to Huldah's poor health, medicines were required. She had diabetes, high blood pressure, and spurs in her knees, and since the family did not have sufficient money to pay all the bills, she went to work at a restaurant in Pratt and received $27.96 per week take-home pay. Clifford was employed and was making $73.90 per week.

At the time of his death, Clifford owned two automobiles: a 1960 Valiant which was mortgaged, and a 1949 Chrysler which was clear. John ordinarily drove the Chrysler to the filling station and Clifford drove the Valiant to work in the oil fields. On occasions, Clifford would drive the Chrysler to work and John would drive the Valiant to the filling station. John purchased the gasoline and oil for the Chrysler and Clifford purchased the gasoline and oil for the Valiant.

The family had one personal checking account in the Peoples State Bank at Pratt, which was in Clifford's name and he was the only one authorized to sign checks on the account. Despite the fact the parents were unable to write checks on the bank account, Huldah conducted the family business, making the deposits and handling the cash. At times Clifford signed blank checks and Huldah would fill them out so she could pay the bills. Both parents testified that the monies of all the parties were commingled and utilized for family expenses. There was evidence that deposits to the account were partially or wholly in cash and it was unknown whose money it was except that it was family money; money from Clifford's salary, Huldah's salary and John's Social Security checks. There was also evidence from an official of the bank that Clifford seldom came into the bank; that his parents handled most of his business, and that Huldah made most of the deposits. There was also evidence from an official of a loan company which made a loan on Clifford's automobile and refinanced the loan against the filling station, that John, Huldah and Clifford were in and out of his office many, many times; that when the loan was made, they were all three in the loan office and discussed their family financial affairs and told him that whatever income they had they put together and paid the bills; that they had a community project and pooled their money to pay their bills; that he personally took all the payments made on the loan, and they were usually made by Huldah in cash except on one occasion when she brought Clifford's pay check in and cashed it and made the payment; that he did not know where the money came from to make any of the payments and they told him they were pooling their money and getting by the best they could. When Clifford died there was a little over $1 in his bank account.

The workmen's compensation examiner made fourteen findings of fact and concluded that the claimants were wholly dependent upon the deceased workman and entered an award in their favor in the amount of $11,528.40. The two pertinent findings read:

"13. That all of the income of the parents and Clifford Leroy Lees, the deceased son, were co-mingled and utilized out of the common fund to pay the bills and living expenses of the three.

"14. That the said Clifford Leroy Lees, the deceased son, contributed to the support of his parents in the amount of $3,842.80 annually."

The respondent and its insurance carrier sought review of the award by the director of workmen's compensation. After examin-

ing the record, the director found the claimants were not wholly dependent upon the deceased workman, but were "partially dependent" upon him at the time of his death and "that the reasonable value of the support given to said John B. Lees and Huldah Ann Lees by said Clifford Leroy Lees is approximately $600 per year," which was in the form of permitting the parents to live in Clifford's trailer house and to drive his automobile, and entered an award of $1,799.93. In making the foregoing finding, the director stated he was "estimating the amount of support contributed by the deceased to his parents, since the record does not clearly fix a dollar amount."

The claimants perfected an appeal to the district court which made findings and entered judgment as follows:

"1. The court accepts what is set out under the heading 'STIPULATIONS' in the Decision and Award of Examiner Thomas C. Boone, dated November 30, 1964.

"2. All 14 of the findings set out under the heading 'FINDINGS OF FACT' in said examiner's decision dated November 30, 1964, are accepted and made the findings of this court.

"3. The average annual wage of the deceased workman Clifford Leroy Lees at the time of his fatal accident June 11, 1963, was $3,842.80, of which, he contributed the full amount to the support and maintenance of his parents, the claimants. The claimants should have judgment for a total award of $11,528.40, payable at the rate of $27.78 per week from June 18, 1963, and for $655.00 for funeral and ambulance expense."

In addition, the district court made the following comments based on the evidence:

". . . The deceased Clifford Leroy Lees, a single man, for a period immediately before his death, June 11, 1963, established and maintained a home for his family group consisting of himself and his dependent parents, the claimants. The parents contributed all their income, $40 from social security per month and $100 from washing dishes per month, and so the claimant parents were in fact, partially dependent. Clifford Leroy Lees, the deceased, however, during that time, contributed all his income to the support of this family of three, in the maintenance of this household and home. *In fact, the evidence shows that Clifford could not have made it without the contributions of his parents. The evidence shows that with reasonable good management, largely by Clifford's mother, there was not more than a nominal balance left over at any time.*

"It is the view of the court that the law as illustrated in syllabus 4 of the case Conklin v. Topeka Wholesale Grocery Company, 183 Kan. 459, is applicable here." (Emphasis supplied.)

In accordance with its findings, the district court entered judgment against the respondent and its insurance carrier in the amount of $11,528.40, payable at the rate of $27.78 per week from and after

June 18, 1963, with lump sum payable to current status; and for the additional sum of $655 for funeral and ambulance expense.

The respondent and its insurance carrier (hereafter referred to as respondents) contend the burden of proof was upon the claimants and there was no substantial evidence to support the findings of the district court. Specifically, that there was no substantial evidence to support a finding of any dollar contribution to the claimants by the workman as a matter of law; or that the funds of the parents and the decedent were commingled.

It would serve little purpose to detail portions of the evidence, or discuss the cash flow chart prepared by the respondents, or comment at length on the testimony of each witness. It may be said that isolated portions of testimony would support the respondents' contention, but we cannot ignore the testimony of the claimants upon which the district court based its findings. The function of this court in reviewing workmen's compensation cases has been stated and restated many times. In the recent case of *Jones v. City of Dodge City,* 194 Kan. 777, 402 P. 2d 108, it was said:

"Under K. S. A. 44-556, the appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law only. Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. (Citations.) In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required to review all of the evidence in the light most favorable to the prevailing party below. Where the findings of fact made by the district court are based on substantial evidence, they are conclusive, and we have no power to weigh the evidence and revise those findings or reverse the final order of the court. Although this court may feel the weight of the evidence, as a whole, is against the findings of fact so made, it may not disturb those findings if they are supported by substantial competent evidence. (Citations) . . ." (l. c. 778.)

We think the astute observation of the district court, "that with reasonably good management, largely by Clifford's mother, there was not more than a nominal balance left over at any time," was not only based on the record and the exhibits but equally as well upon the cash flow analysis of Clifford's earnings prepared by the respondents. We are of the opinion the findings of fact made by the district court were based on substantial evidence although there was evidence in the record which would have supported different findings had they been made.

The respondents next contend that where, as here, a son is found to be partially supporting his parents, the rule announced in

*Conklin v. Topeka Wholesale Grocery Co.,* 183 Kan. 458, 327 P. 2d 860, does not apply. The argument appears to be based upon the contention there was no substantial evidence to support the district court's finding that Clifford contributed to the support of his parents the amount of $3,842.80 annually. Dependency upon a workman's earnings may vary from wholly dependent to wholly independent (*McCormick et al. v. Coal & Coke Co.,* 117 Kan. 686, 690, 232 Pac. 1071), and the degree of dependency is a question of fact in each case. (*Slater v. Milling Co.,* 106 Kan. 772, 774, 189 Pac. 908; *McCormick et al. v. Coal & Coke Co.,* supra.) As indicated, we have concluded there was substantial evidence to support the district court's finding of Clifford's annual contributions of $3,842.80. Moreover, the fact that the contributing decedent was a son of his partially dependent parents rather than, for example, the husband of a partially dependent wife, makes no difference. The standard is *dependency* and where the parents of a deceased child are found to be partially dependent on the workman's earnings, the statute (44-510) and the prior decisions of this court (*Slater v. Milling Co.,* supra; *Kelly v. Lassen Hotel Co.,* 161 Kan. 444, 168 P. 2d 527; *Peterson v. Fairmont Food Co.,* 180 Kan. 271, 302 P. 2d 1001; *Conklin v. Topeka Wholesale Grocery Co.,* supra) provide the award is to be that percentage of the sum provided for total dependency as the workman's contributions bear to his earnings during a contemporaneous period.

The respondents maintain the *Peterson* and *Conklin* cases misinterpret the statute and assert by its erroneous construction, the court has, in effect, rewritten 44-510 (2) (*b*) to include the words italicized and in parentheses, *i. e.,* "and himself" in the following portion thereof:

"If a workman does not leave any such dependents but leaves dependents in part dependent on his earnings, such percentage of the sum provided for total dependency in paragraph 2 (*a*) of this section as employee's average annual contributions which the deceased made to the support of such dependents (*and himself*) during the two (2) years preceding the injury bears to his average annual earnings during a contemporaneous period, during such two (2) years."

The *Peterson* and *Conklin* cases are very similar; the husbands were killed and the wives were employed and had independent incomes. They deposited their earnings in a joint bank account from which expenditures, personal and otherwise, were made. The husbands contributed their entire earnings to the support of themselves and their wives in the maintenance of their household and homes. The district court found the claimant widows were in part

dependent upon the earnings of their deceased husbands and in accordance with 44-510 (2) (*a*) and (*b*) were entitled to three times the workman's annual earnings. The respondents illustrate their specific point, which they state is not authorized by the statute, by quoting and emphasizing from *Peterson:*

". . . found . . . the entire wages of the workman for the two years preceding his death were paid for the support of *himself,* his wife and family . . ." (l. c. 272.)

and from *Conklin:*

". . . finding . . . that her husband contributed his entire earnings to the support of *himself* and his wife in the *maintenance of their household and home."* (l. c. 462.)

We think the contention is without merit. The opinion denying motions for a rehearing in the *Peterson* case was filed June 9, 1956. The opinion in the *Conklin* case was filed July 8, 1958. The legislature has convened in regular session four times since the *Peterson* decision and three times since the *Conklin* decision, and has also been in special sessions.

During the 1957, 1959, 1961 and 1963 regular sessions of the legislature Section 44-510 was amended at each session and the only change made in subsections (2) (*a*) and (*b*) was in subsection (*a*) to increase the total amount of compensation to be awarded under the statutory formula from $12,500 to $15,000. In *State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 258 P. 2d 225, it was said:

". . . It would seem that a judicial construction placed upon its language by a united court for more than ten years must be deemed to have received the sanction and approval of the legislative bodies. If this court in the first instance mistook the purpose and intent of the statute, there has been an abundant opportunity for the law-making power to give further expression to its will, and that its failure to act amounts to a ratification of the interpretation placed upon that act by this court . . ." (l. c. 761.)

It is, of course, axiomatic that courts do not write legislation; that is the function of the legislature. However, when the court has construed a statute, its construction is as much a part of the law as if embodied in the statute in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law as it deems advisable; the court should not attempt to do so. (*State v. One Bally Coney Island No. 21011 Gaming Table,* supra.)

In view of the foregoing, we find no reason to change the rule of law stated by this court in the *Peterson* and *Conklin* cases. We

conclude that if the normal living expenses of a deceased workman, who contributes his entire earnings to the support of himself and his dependents in the maintenance of their household and home, is to be excluded from the statutory formula of determining whole or partial dependency, the legislature should so provide.

The manner of determining an award of compensation where the district court finds a workman's dependent to be partially dependent upon his earnings is succinctly stated in the *Conklin* case:

"Had his wife been wholly dependent upon his earnings the award, under 44-510 (2) (*a*), would be three times that amount, or $12,000. She was, however, a partial dependent, but he contributed his entire earnings to the support of himself and his wife in the maintenance of their household and home. Under 44-510 (2) (*b*) the award in the case of partial dependency is that percentage of the award for total dependency as the workman's contributions bear to his earnings, and it follows that the award here would be one hundred percent of that due in the case of total dependency . . ." (l. c. 463, 464.)

In the instant case the district court found that, and the finding is supported by competent evidence, Clifford contributed his entire earnings of $3,842.80 to the support and maintenance of himself and his parents in the maintenance of their household and home. Hence, under the statutory formula prescribed in 44-510 (2) (*a*) and (*b*) the award would be one hundred percent of that due in case of total dependency, or as awarded by the district court, the sum of $11,528.40.

The respondents assumed the burden in this appeal of making it affirmatively appear the district court erred, and failing to sustain that burden, and finding no error otherwise, we conclude the judgment of the district court must be affirmed.

It is so ordered.

FONTRON, J., concurs in the result.