No. 60,778

CHARLES R. VANDEVER, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant*.

(763 P.2d 317)

Opinion filed October 28, 1988.

*Brian Cox*, Legal Services Bureau of the Kansas Department of Revenue, argued the cause and *Grant L.C. Brooks*, of the same department, was with him on the brief for appellant.

*John K. Chenoweth*, of McClellan & Chenoweth Chartered, of Fredonia, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The Kansas Department of Revenue, Division of Vehicles, (the Department) appeals from an order of the district court overruling an administrative decision which denied plaintiff, Charles R. Vandever, the renewal of his Kansas driver's

license. The Court of Appeals, in an unpublished opinion filed April 21, 1988, agreed with the district court's determination that plaintiff could safely operate a motor vehicle and remanded the case for further proceedings. We granted the Department's petition for review.

The facts are not disputed. In January 1985, at the age of 71, Charles R. Vandever applied for renewal of his Kansas driver's license. Vandever has stipulated that his best-corrected visual acuities are 20/100 in his left eye and 10/200 in his right eye. After his renewal application was denied, Vandever sought and obtained an administrative hearing. Because he did not meet the minimum visual acuity required by regulation in order to be eligible for a license, the Department affirmed its prior decision.

Vandever filed a petition in district court on May 31, 1985, seeking a de novo judicial review. On January 23, 1987, the district court heard evidence introduced by Vandever that he would suffer hardship without renewal of his driver's license and that he was capable of driving safely despite his poor eyesight. After denying the Department's motion for dismissal at the conclusion of the evidence, the district court found that the plaintiff was "capable of driving a vehicle safely" even though his visual acuity falls below 20/60 in each eye. The court reversed the Department's denial of Vandever's request to renew his license and directed the Department to grant him a license with the restrictions that he drive only during daylight hours and within a 35-mile radius of his home.

The Department appealed. The Court of Appeals held that the district court improperly admitted evidence of the hardship plaintiff would suffer if his driving privileges were not renewed. However, it found that the error was harmless. The Court of Appeals also held that the district court correctly considered evidence of whether the plaintiff could safely operate a vehicle, despite the fact that his vision did not meet the Department's regulatory standards. The court then held that the district court had no authority to direct the Department to grant a license with restrictions specified by the court. The court reversed and remanded for a determination by the district court of whether Vandever is entitled to an unrestricted license. This court granted review.

The specific issue is whether the district court may order the

issuance of a driver's license when the applicant has failed to pass the eyesight examination required by statute and the regulations of the Department. Kansas statutes delegate to the secretary of revenue the authority to establish standards for the safe operation of motor vehicles. The Motor Vehicle Drivers' License Act reads in part:

"The secretary of revenue shall adopt rules and regulations establishing qualifications for the safe operation of the various types, sizes and combinations of vehicles in each class of motor vehicles established in subsection (a)." K.S.A. 8-234b(d).

## K.S.A. 8-237 states:

"The division of vehicles shall not issue any driver's license to any person:

. . . .

"(f) Who is required by the motor vehicle drivers' license act to take an examination, unless the person has successfully passed the examination."

## K.S.A. 1987 Supp. 8-247 deals with expiration of licenses and examinations required for renewal. It provides in part:

"(d) Every driver's license shall be renewable on or before its expiration upon application and payment of the required fee and *successful completion of the examinations required by subsection (e). Application for renewal of a valid driver's license shall be made to the division in accordance with rules and regulations adopted by the secretary of revenue.* . . . Upon satisfying the foregoing requirements of this subsection, and if the division makes the findings required by K.S.A. 8-235b and amendments thereto for the issuance of an original license, the license shall be renewed without examination of the applicant's driving ability. . . .

"(e)(1) *Prior to renewal of a driver's license, the applicant shall pass an examination of eyesight* and a written examination of ability to read and understand highway signs regulating, warning and directing traffic and knowledge of the traffic laws of this state. Such examination shall be equivalent to the tests required for an original driver's license under K.S.A. 8-235d and amendments thereto. A driver's license examiner shall administer the examinations without charge, and shall report the results of the examinations on a form provided by the division, which shall be submitted by the applicant to the division at the time such applicant applies for license renewal.

"(2) In lieu of the examination of the applicant's eyesight by the examiner, the applicant may submit a report on the examination of eyesight by a physician licensed to practice medicine and surgery or by a licensed optometrist. The report shall be based on an examination of the applicant's eyesight not more than three months prior to the date the report is submitted . . . .

. . . .

"(4) *The division shall determine whether the results of the written examination and the eyesight reported are sufficient for renewal of the license,* and if the results of either or both are insufficient, the division shall notify the applicant of such fact and return the license fee. In determining the sufficiency of an

applicant's eyesight, the division may request an advisory opinion of the medical advisory board, which is hereby authorized to render such opinions." (Emphasis added.)

Clearly, the legislature has delegated broad authority to the secretary of revenue over the particulars of driver's license qualifications. Pursuant to the authority granted by K.S.A. 8-234b(d), the secretary of revenue adopted a regulation pertaining to vision requirements for licensees. In 1985, when plaintiff applied for renewal of his license, K.A.R. 92-52-1 read:

"**92-52-1. Vision standards for drivers.** The division of vehicles will use the following vision standards for driver's license applicants:

"(a) Any applicant testing 20/40 or better in each eye separately at the examination station shall meet the vision requirements. Any applicant failing to meet this requirement shall be given a vision form and referred to a vision specialist of their choice.

"(b) *Any applicant who has received a vision report from a vision specialist shall have 20/60 or better vision with or without corrective lens in at least one eye in order to be eligible to be issued a driver's license.*

"Applicants failing to meet any of the above standards may request an administrative review by the director of vehicles." (Emphasis added.)

Although the regulation was amended effective May 1, 1987, the minimum visual standard remains the same.

The statutes provide for administrative review of a decision by the Department not to renew a license for certain reasons. K.S.A. 1987 Supp. 8-247(e)(6) provides in part:

"Any [renewal] applicant who is denied the renewal of such person's driver's license because of a mental or physical disability shall be afforded a hearing in the manner prescribed by subsection (b) of K.S.A. 8-255."

K.S.A. 1987 Supp. 8-255(b) sets forth the procedure to be followed in requesting administrative review and the procedure to be followed at the hearing.

Finally, the Act also provides for the right to appeal an adverse administrative decision to the district court. K.S.A. 8-259(a), as it was worded at the time Vandever filed his petition for judicial review, read as follows:

"(a) Any person denied a license or whose license has been canceled, suspended, or revoked by the division . . . shall have the right to file a petition within sixty (60) days thereafter for a hearing in the matter in the district court in the county wherein such person shall reside, and such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for hearing upon ten (10) days' written notice to the division and *thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is entitled to a*

*license* or is subject to suspension, cancellation, or revocation of license *under the provisions of this act*: . . . *Provided further,* The trial on appeal as herein provided for shall be a trial *de novo* . . . ." (Emphasis added.)

Although the statute has been amended, the amendments are not pertinent to this appeal.

The controlling issue is whether the district court may ignore the vision standards adopted in K.A.R. 92-52-1 in determining whether plaintiff is entitled to renewal of his driver's license.

Plaintiff does not challenge the validity of K.A.R. 92-52-1. Instead, he argues that the regulation's authorizing statute, K.S.A. 8-234b(d), sets forth as an overall goal the safe operation of motor vehicles. He reasons, and the district court apparently agreed, that if plaintiff can safely operate a motor vehicle regardless of his visual acuity, the minimum vision standard embodied in the regulation may be ignored. We do not agree.

Regulations have the full force and effect of law if they are duly adopted pursuant to statutory authority for the purpose of carrying out the policy declared by the legislature in the statutes. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n,* 237 Kan. 96, 100, 697 P.2d 1279 (1985); *Carpenter v. Johnson,* 231 Kan. 783, 789, 649 P.2d 400 (1982); *Goertzen v. State Department of Social & Rehabilitation Services,* 218 Kan. 313, Syl. ¶ 1, 543 P.2d 996 (1975); *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, Syl. ¶ 3, 417 P.2d 255 (1966).

Plaintiff does not contend that the regulation establishing the minimum visual acuity is beyond the scope of the Department's statutory authority, nor that it was adopted without following the proper statutory procedure. Instead, he argues that the administrative review provided for by the regulation itself would be meaningless unless it is for the purpose of allowing exceptions to the regulation's vision requirement. He argues that the regulation merely creates a rebuttable presumption which may be overcome by an applicant who demonstrates that he can safely operate a vehicle. This construction is not supported by the language of the regulation read in the context of the pertinent statutes and is overly broad. The purpose of the administrative review is to ensure a fair determination of disputed facts. Here the key fact, plaintiff's visual acuity, was undisputed.

The Department was required to follow its own regulations and if it had failed to do so, the action would have been unlawful. See *Tew,* 237 Kan. at 100; *Kansas Commission on Civil Rights v.*

*City of Topeka Street Department,* 212 Kan. 398, Syl. ¶ 1, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973); *Clairborne v. Coffeyville Memorial Hospital,* 212 Kan. 315, 317, 510 P.2d 1200 (1973), and cases cited therein. Likewise, it was improper for the district court to ignore the regulation by resorting to the general policy of "safe operation" set forth in the authorizing statute.

K.S.A. 8-234b(d) requires the secretary of revenue to adopt rules and regulations to implement the provisions of the Motor Vehicle Driver's License Act, and K.S.A. 1987 Supp. 8-247(e) requires every applicant for a renewal driver's license to pass an eyesight examination. Obviously, minimum standards for passing the eyesight examination must be established and adhered to if the statutes are to be properly applied. Absent any showing or contention that the visual acuity standards of K.A.R. 92-52-1 are unreasonable, arbitrary, unnecessary, or invalid, the regulation sets the minimum standard which may not be deviated from by application of a broad general concept of safe driving ability or by a showing that the driver may be capable of driving a vehicle safely.

Here, the sole issue before the district court was whether the plaintiff met the minimum vision standard required by the Department's regulation. Whether plaintiff could safely operate a motor vehicle was not the issue, even though evidence introduced before the district court would support such a factual finding. As pointed out by the Court of Appeals in *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988), even in cases where de novo judicial review of administrative action is authorized by statute, the review is nevertheless an appeal and is ordinarily limited to the issues raised before the administrative agency.

Based upon the undisputed evidence that plaintiff did not meet the visual acuity standards required by the statutes and regulations, we conclude the district court erred in failing to sustain the Department's motion to dismiss the action at the close of the evidence.

The judgment of the district court is reversed and the judgment of the Court of Appeals is also reversed.

Six, J., not participating.