No. 69,972

IN THE MATTER OF THE APPEAL OF CHIEF INDUSTRIES, INC., REGARDING CORPORATE INCOME TAXES FOR F.Y.E. 6-25-82 THROUGH 6-28-85.

(875 P.2d 278)

Opinion filed June 3, 1994.

*Jeffrey L. Ungerer*, of Jeffrey L. Ungerer, Attorney at Law, P.A., of Topeka, argued the cause, and *Gayle P. Meierhoff*, of the same firm, was with him on the briefs for appellant.

*David Prager, III*, of Kansas Department of Revenue, argued the cause, and *Mark A. Burghart*, general counsel, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by Chief Industries, Inc., from an order of the Board of Tax Appeals (BOTA) which upheld the income tax audit determination by the Kansas Department of Revenue (Department) that the taxpayer's 1985 sale of common stock was "business income" under K.S.A. 79-3271(a), a percentage of which was apportionable to Kansas.

The general background facts may be summarized as follows. Chief Industries is a nondomiciliary corporation whose principal office is located in Grand Island, Nebraska. Chief Industries' Kansas activity is a recreational vehicle production facility located in Russell. Chief Industries maintains no managerial or operational offices in Kansas. Chief Industries primarily manufactures and sells engineered metal products, agricultural grain bins and drying equipment, mobile homes, recreational vehicles, electronic signs, and wastewater treatment systems, and also constructs buildings. Chief Industries operates through eight divisions and a few subsidiary corporations.

In 1972, Chief Industries purchased the rights to an automobile frame straightener and established its automotive division (Chief Automotive) for frame straightener production and sales. That division had revenue in excess of $21,000,000 in 1984. Neither Chief Automotive (nor its successor, Chief Automotive Systems, Inc.) had any direct business with the recreational vehicle facility in Kansas, although each did some business with some of the same other divisions and subsidiaries of Chief Industries. In 1983, Chief Industries was experiencing serious liquidity problems. The decision was made to incorporate Chief Automotive and go public with the new corporation to raise needed cash. On March 23, 1984, Chief Industries exchanged its Chief Automotive division assets for 2,500,000 shares of Chief Automotive common stock and 11,914.81 shares of Chief Automotive's cumulative preferred stock. As further parts of the deal, (1) the new corporation was to assume a $3,000,000 note of Chief Industries; and (2) Chief Industries retained the right to collect various existing long-term installment sales contracts totalling $1,939,000.

On May 31, 1984, Chief Automotive was incorporated as Chief Automotive Systems, Inc. (Automotive), headquartered in Ne-

braska. From May 31, 1984, to August 9, 1984, Chief Industries owned 100 percent of Automotive's stock. On August 10, 1984, Chief Industries sold 1,150,000 shares of Automotive common stock in its initial public offering. Of the approximately $10,200,000 in proceeds from this initial sale of stock, $3,000,000 was used to pay off a Chief Industries' note to Overland National Bank, its banker; $1,700,000 was used to repay Chief Industries for advances to Automotive. The remainder was put into certificates of deposit. By this sale, Chief Industries' ownership of Automotive was reduced to 68.5 percent.

On May 18, 1985, Chief Industries sold an additional 1,100,000 shares of its Automotive stock at $17.72 per share. This sale reduced Chief Industries' interest in Automotive to 38.3 percent. Chief Industries received $19,276,000 in net proceeds from this sale. Chief Industries anticipated that this sale would enable it to "be completely out of debt." The proceeds went "into the general business needs of the company such as retirement of debt, purchase of assets, employee payroll, maintenance, etc."

Chief Industries allocated proceeds from the May 18, 1985, stock sale as nonbusiness income on its F.Y.E. June 28, 1985, Kansas return. The Department apportioned the Automotive gain as business income in its February 13, 1987, corporate income tax assessment. As approved by order of the Director of Taxation, the Department amended the assessment on January 24, 1991, to include Automotive and Chief Industries in the combined report computations on a prorated basis through May 18, 1985, at which time Chief Industries' ownership of Automotive was not more than 50 percent. On May 8, 1992, the Department revised the assessment based upon additional information obtained from the Nebraska Department of Revenue and issued a final revised amended assessment. As of that date, tax and interest were $120,146.

Chief Industries appealed the income tax assessment to BOTA.

The issues and the positions of the parties before BOTA were well summarized by BOTA as follows:

"4. The income at issue arose from Chief Industries' May 18, 1985, sale of a portion of its common stock holdings in its subsidiary, Chief Automotive,

Inc. In a nutshell, the Taxpayer asserts that the capital gain resulting from the sale of its intangible asset constitutes *nonbusiness income* as defined by K.S.A. 79-3271(e); therefore, for purposes of state income taxation, the income derived therefrom should be allocated in its entirety to Nebraska, the Taxpayer's commercial domicile, consistent with K.S.A. 79-3274 and 79-3276(c). The Department of Revenue asserts that the capital gain resulting from the Taxpayer's sale of stock constitutes *business income* as defined by K.S.A. 79-3271(a); therefore, a portion of the capital gain should be apportioned to Kansas as taxable income pursuant to K.S.A. 79-3279(b).

"5. The Taxpayer primarily contends that Kansas has adopted only the 'transactional test' for determining when income constitutes business income. The Taxpayer cites *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781 (1968) in support of its position. The Taxpayer asserts that the sale of stock at issue fails a narrowly defined transactional test, the sole test recognized by Kansas, and thus is nonbusiness income. In the alternative, the taxpayer contends that the sale of stock at issue also fails the functional test. The Department of Revenue contends that the 'functional test' is alive in Kansas, as evidenced by K.A.R. 92-12-73(b), which is consistent with Kansas Statutes. The Department of Revenue contends that the sale of stock at issue satisfies the functional test, and thus is business income. The Department of Revenue further asserts that the sale of stock at issue satisfies a broadly defined transactional test, and thus is business income."

BOTA held that the May 18, 1985, sale of stock:

1. Failed the "narrowly defined" transactional test set forth in *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781 (1968);

2. passed the functional test established by K.A.R. 92-12-73(b);

3. alternatively, passed a "broadly defined" transactional test such as is set forth in *Welded Tube Co. of Amer. v. Com. of Pa.*, 101 Pa. Commw. 32, 515 A.2d 988 (1986); and

4. was business income includable on Chief Industries' F.Y.E. June 28, 1985, unitary Kansas return and apportionable to Kansas.

Chief Industries appeals therefrom.

Preliminarily, the rules relative to the applicable scope of review need to be stated. K.S.A. 74-2426(c) provides that BOTA's order is subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* K.S.A. 77-621(a)(1) provides that Chief Industries bears the burden of proving the invalidity of the agency action. K.S.A. 77-621(c) provides that the court may grant relief only when it

has made certain determinations, including that the agency erroneously interpreted or applied the law, that the agency made determinations of fact not supported by substantial evidence, that the agency engaged in an unlawful procedure or failed to follow prescribed procedure, or that the agency acted unreasonably, arbitrarily, or capriciously. *In re Tax Appeal of Morton Thiokol, Inc.,* 254 Kan. 23, 26, 864 P.2d 1175 (1993).

This court has long recognized that matters of assessment and taxation are administrative in character and that the judiciary may not substitute its judgment for that of the administrative agency. *In re Order of Board of Tax Appeals,* 236 Kan. 406, 409-10, 691 P.2d 394 (1984); *Symns v. Graves,* 65 Kan. 628, 636, 70 Pac. 591 (1902). In reviewing questions of law, however, a court may substitute its judgment for that of the agency. *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981).

Chief Industries raises a number of issues on appeal. As our resolution of the first issue is dispositive herein, there is no need to set forth all issues raised. That broad issue and the parties' contentions relative thereto were well summarized in the previously quoted analysis by BOTA of the issues before it. Highly simplified, the question becomes what test or tests are to be applied in Kansas under K.S.A. 79-3271(a) in determining whether or not the sale of stock was business income apportionable to Kansas. BOTA held three tests are applicable: (1) narrow transactional; (2) functional; and (3) broad transactional. BOTA upheld the Department's assessment on the basis of tests (2) and (3).

Kansas' right to tax the proceeds herein depends upon the definition of business income set forth in K.S.A. 79-3271, as follows:

"As used in this act, unless the context otherwise requires: (a) 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

. . . .

"(e) 'Nonbusiness income' means all income other than business income."

In *Western Natural Gas,* 202 Kan. 98, this court was called upon to construe K.S.A. 79-3271(a) in determining whether pro-

ceeds from the liquidation of Kansas gas and oil leases by a non-domiciliary corporation was business income. This court held:

"Our next question is whether the income realized by Western on the sale of leases was 'business income' as defined by K.S.A. 79-3271(a). *To constitute business income it must arise from transactions and activity in the regular course of a trade or business. Business income includes income from intangible property if the acquisition, management and disposition giving rise to the income constitute integral parts of the regular trade or business operations. It is not the use of the property in the business which is the determining factor under the statute. The controlling factor by which the statute identifies business income is the nature of the particular transaction giving rise to the income. To be business income the transaction and activity must have been in the regular course of taxpayer's business operations.*

"In an analogous case this court held the sale of the entire stock of oil on hand was not a sale 'in the ordinary course of trade or business' as that term is used in the Kansas Bulk Sales Law. (See *Oil Co. v. Consolidated Companies,* 110 Kan. 245, 203 Pac. 915.)

"The rule of statutory construction set forth in K.S.A. 1967 Supp. 77-201 (*Second*) reads:

'Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning.'

"In construing the present statute we are mindful of the above statutory rule as well as those fundamental rules stated in Syllabus 1 of *Hand v. Board of Education,* 198 Kan. 460, 426 P.2d 124, and in syllabi 1 and 2 of *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P.2d 128. These rules are well established and need not be quoted at length.

"The word 'regular' is defined in Webster's Third New International Dictionary (Unabridged) as steady or uniform in course, practice or occurrence and not subject to unexplained or irrational variation.

"The present sale of leases cannot be considered made in the regular course of business operations. This sale by Western included all of its assets. A complete plan of liquidation was carried out requiring the affirmative vote of the stockholders. The sale was not made in the regular course of taxpayer's business operations when measured by its former practices. It had not sold oil and gas leases. The sale contemplated cessation rather than operation of the business.

"The income from the sale falls in the classification of non-business income. The allocation of such income is controlled by K.S.A. 79-3276. Rights in oil and gas leases are intangible personal property for the purposes of our present income tax act. As such the capital gain would have been allocable to Kansas under K.S.A. 79-3276(c) if the taxpayer's commercial domicile was in Kansas. The commercial domicile of Western was in Houston, Texas. Therefore, the income from

the sale of Western's intangible personal property is not taxable in Kansas." 202 Kan. at 100-02. (Emphasis supplied.)

The construction of K.S.A. 79-3271(a) set forth in *Western Natural Gas* is what BOTA characterizes as the "narrowly defined transactional test." BOTA found that, under the "narrowly defined transactional test" set forth in *Western Natural Gas*, the sale of stock would not be business income as it was not a transaction or activity occurring in the regular course of the taxpayer's business operations. The Department did not appeal from this determination. Further, neither before BOTA nor before this court does the Department contend that the sale of stock herein satisfies the requirements for determining business income set forth in *Western Natural Gas*. Indeed, a persuasive argument for such a proposition would be difficult to muster.

The Department's primary contention is that Kansas has, subsequent to the *Western Natural Gas* decision, adopted an alternative functional test for determining whether or not income is business income under K.S.A. 79-3271(a), and that the sale of stock herein comes within that alternative test. BOTA agreed with the Department.

The development of the functional test may be summarized as follows. K.S.A. 79-3271(a) is a part of the Uniform Division of Income for Tax Purposes Act (UDITPA) (K.S.A. 79-3271 *et seq.*), which was adopted in Kansas in 1963. Subsequent to our decision in *Western Natural Gas*, the Multistate Tax Commission (MTC) developed model regulations applicable to the uniform act. A number of uniform act states have adopted these regulations. Kansas adopted the model regulations in 1979. The portion thereof pertinent herein was codified as K.A.R. 92-12-73, which provides:

"The following are rules for determining whether particular income is business or nonbusiness income. . . .

"(b) Gain or loss from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used in the taxpayer's trade or business. However, if such property was utilized for the production of nonbusiness income or otherwise was removed from the property factor before its sale, exchange or other disposition, the gain or loss will constitute nonbusiness income."

This regulation sets forth what is commonly characterized as the functional test. Rather than focusing on the particular transaction as is required by the transactional test, the functional test focuses on the utilization of the property in the business.

The Department contends (and BOTA held) the functional test is now a valid alternative independent test for determining what is business income under K.S.A. 79-3271(a). Its argument is based on several grounds. First, the Department argues the functional test better embodies the unitary business principle underlying the uniform act. In support thereof, the Department shows that a number of other states have embraced the functional test through either adoption of the model regulation or by court decision.

Relative to the effect of the adoption of the regulation in question, BOTA reasoned:

"33. The Board notes that '[r]egulations have the full force and effect of law if they are duly adopted pursuant to a statutory authority for the purpose of carrying out the policy declared by the legislature in the statutes.' *Vandever v. Kansas Dept. of Revenue*, 243 Kan. 693, 697, 763 P.2d 317 (1988); *see also J. G. Masonry, Inc. v. Dept. of Revenue*, 235 Kan. 497, 500, 680 P.2d 291 (1984), citing *Harder v. Kansas Comm'n on Civil Rights*, 225 Kan. 556, 559, 592 P.2d 456 (1979), citing K.S.A. 77-425.

"34. Here, the Secretary of Revenue is given the authority to adopt rules and regulations. (K.S.A. 79-3236). The Secretary has adopted regulations which recognize the transactional and functional tests for business income. The regulations are not in conflict with existing statutes; the definition of business income appearing in K.S.A. 79-3271(a) contemplates the 'transactional' and 'functional' tests in its first and second clauses, respectively. (See paragraph 18, *supra*.) Furthermore, many states having statutes with language identical to K.S.A. 79-3271(a) have adopted both the transactional and functional tests. Finally, based upon United States Supreme Court holdings, the functional test does not violate constitutional requirements. Therefore, the Board finds the taxpayer's contention that Kansas does not recognize the functional test for purposes of the capital gain at issue to be without merit.

"35. To further explain, the decision cited by the taxpayer in support of its contention that Kansas does not recognize the functional test for business income, *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781 (1968), was rendered prior to the adoption of the regulations promulgated by the Department of Revenue (K.A.R. 92-12-71 through K.A.R. 92-12-104 were adopted in 1979). Even if the definition of business income

set forth by statute was unclear as to whether the functional test exists in Kansas, the Board, like a reviewing court, may not simply devise its own interpretation of the statute because here, a valid administrative interpretation exists. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837 (1984). The Board may not usurp the authority specifically given to the Secretary of Revenue in K.S.A. 79-3236 by overriding any policy promulgated by the Secretary. Therefore, the only relevant question before the Board is whether the Department of Revenue permissibly interpreted K.S.A. 79-3271(a), and in paragraph 34, the Board has found as much.

. . . .

"37. The Board concludes that the 'functional test' is alive in Kansas. Therefore, when determining whether the gain from the sale of stock at issue constitutes business income, the transactional and the functional tests should be applied. If the income at issue satisfies *either* test, it is business income which can be apportioned to Kansas."

As an alternative ground, BOTA found the proceeds were business income based upon a "broadly defined" transactional test such as is set forth in *Welded Tube Co. of Amer. v. Com. of Pa.,* 101 Pa. Commw. 32. The Department asks that we affirm that conclusion as well.

There is a fatal flaw inherent in all three of these arguments (the functional test is a wise and logical additional test under K.S.A. 79-3271[a], the regulation K.A.R. 92-12-73 has the force of law, and a broadly defined transactional test exists in Kansas). *The holding of* Western Natural Gas *has not been modified, nor has the statute it construed been subsequently amended by the legislature although over 25 years have passed since the date of the decision.*

In *Lees, Administrator v. White,* 197 Kan. 118, 124, 415 P.2d 272 (1966), this court stated the following relative to the legal effect of statutory interpretation by this court:

"In *State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 258 P.2d 225, it was said:

'. . . It would seem that a judicial construction placed upon its language by a united court for more than ten years must be deemed to have received the sanction and approval of the legislative bodies. If this court in the first instance mistook the purpose and intent of the statute, there has been an abundant opportunity for the law-making power to give further expression to its will, and that its failure to act amounts to a ratification of the interpretation placed upon that act by this court . . .' (l.c. 761.)

"It is, of course, axiomatic that courts do not write legislation; that is the function of the legislature. However, when the court has construed a statute, its construction is as much a part of the law as if embodied in the statute in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law as it deems advisable; the court should not attempt to do so."

In *Western Natural Gas,* this court construed K.S.A. 79-3271(a) and held it required a transactional test. Specifically, this court held:

"Our next question is whether the income realized by Western on the sale of leases was 'business income' as defined by K.S.A. 79-3271(a). To constitute business income it must arise from transactions and activity in the regular course of a trade or business. Business income includes income from intangible property if the acquisition, management and disposition giving rise to the income constitute integral parts of the regular trade or business operations. It is not the use of the property in the business which is the determining factor under the statute. The controlling factor by which the statute identifies business income is the nature of the particular transaction giving rise to the income. To be business income the transaction and activity must have been in the regular course of taxpayer's business operations." 202 Kan. at 100-01.

The corresponding syllabus ¶ 3 states:

"Under K.S.A. 79-3271(a) the controlling factor to determine business income is the nature of the particular transaction giving rise to the income."

K.S.A. 79-3271(a) is not before us in a case of first impression to construe what test or tests might, could, or should be required thereunder. This court has construed the statute in *Western Natural Gas* to require application of the transactional test set forth therein. BOTA characterizes this as a "narrowly defined" transactional test. However one might characterize the test, the construction set forth in *Western Natural Gas* is as much a part of the law as if embodied in the statute in plain and unmistakable language (*Lees, Administrator v. White,* 197 Kan. at 124). BOTA held that the sale of stock herein did not satisfy the statutory construction contained in *Western Natural Gas* and would not be business income thereunder. The Department does not challenge this determination.

The defendant in *Western Natural Gas* was the then director of the Department, and the court's statutory construction was adverse to the Department's position. Eleven years after the *West-

*ern Natural Gas* decision, the Department adopted a regulation which BOTA has relied upon to add a separate and independent test to the same statute. Administrative regulations may be promulgated to implement statutes and the exercise of delegated authority, and duly adopted administrative regulations have the force of law. Administrative regulations do not supplant statutory law nor do they preempt judicial statutory construction. *Peoples Natural Gas v. Kansas Corporation Commission*, 7 Kan. App. 2d 519, 528, 644 P.2d 999, *rev. denied* 231 Kan. 801 (1982). Neither BOTA nor the Department can change the test this court established in *Western Natural Gas* by reliance on a regulation. The legislature can modify this court's statutory construction, but it has not done so.

Inferentially, in this appeal we are asked to modify the holding in *Western Natural Gas* by broadening the test. We have the power to do so, but under the rationale expressed in *State v. One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 258 P.2d 225 (1953), it would be unwise to do so absent some compelling reason not shown herein.

The adoption of the functional test as an independent alternative test has been criticized. As one tax commentator stated:

"Applying the functional test as an independent alternative test essentially ignores the statutory requirement that business income must constitute an 'integral part of the taxpayer's regular trade or business operations.' The words 'integral,' 'regular,' and 'operations' must be taken into account in analyzing the existence of business income. Merely examining whether an asset produced business income while owned by the taxpayer effectively ignores this very important part of the statute.

"Furthermore, even under the so-called functional test, the actual disposition transaction must be an integral part of the taxpayer's regular trade-or-business operations. The statute specifically requires that the 'acquisition, management, *and* disposition of the asset' must be an integral part of the taxpayer's regular trade-or-business operations. (Emphasis added.) Therefore, to constitute business income, the capital gain transaction must have been in the regular course of the taxpayer's business operations, even if it involves the sale of an asset previously used in the taxpayer's business operations." Lisonbee, *State of the Law of Nonbusiness Gain*, 7 J. St. Tax. 333, 335-36 (1989).

In *General Care Corp. v. Olsen*, 705 S.W. 2d 642 (Tenn. 1986), the taxpayer corporation treated as nonbusiness income earnings

the gain it had realized upon being merged with and into a subsidiary of the Hospital Corporation of America. Tennessee had adopted the uniform act. The Tennessee Supreme Court approved this tax treatment. In so doing, it rejected the functional test as being not in accord with the plain language of the statute, reasoning:

"We find the Commissioner's position that the 'disposition' of property need not be within the scope of the taxpayer's regular business operations in order to give rise to business income contrary to the plain language of the statute. The drafters' use of the conjunction 'and' clearly indicates that the disposition, as well as the acquisition and management of property must be an integral part of the taxpayer's regular trade or business operations in order to produce business earnings." 705 S.W.2d at 646.

The Tennessee court stated that if there were to be a functional test in the Tennessee statute (the same as that in Kansas), it would be up to the legislature to make such an amendment (which the Tennessee Legislature ultimately did).

The Department further argues the functional test is mandated by *Allied-Signal v. Director, Tax. Div.*, 504 U.S. 768, 119 L. Ed. 2d 533, 112 S. Ct. 2251 (1992). We do not agree. *Allied-Signal* concerned a state's power under the United States Constitution to tax a nondomiciliary corporation. The opinion brought together a number of prior opinions but does not appear to have created any new law applicable herein. Essentially, the court reaffirmed the unitary business principle as being the key to a state's federal power to tax a nondomiciliary corporation's income. The court denied the right to tax under the facts before it as a unitary business was not present. In *Allied-Signal*, the court was urged to adopt the UDITPA definition of business income (our K.S.A. 79-3271[a]) as the constitutional test. This the court declined to do. We find nothing in *Allied-Signal* which requires recognition of an independent functional test in K.S.A. 79-3271(a).

We conclude that *Western Natural Gas* is controlling herein. The test to be applied is the transactional test set forth therein as being the test required by K.S.A. 79-3271(a). It is conceded that under this test the sale of stock in question is nonbusiness income not apportionable to Kansas. We further conclude that

BOTA erroneously interpreted the law when it held that: (1) K.S.A. 79-3271(a) provides an additional separate and independent functional test by virtue of the adoption of K.A.R. 92-12-73 by the Department; (2) a broader transactional test exists in Kansas which may be applied alternatively to the test set forth in *Western Natural Gas;* and (3) the proceeds from the sale of stock was business income under K.S.A. 79-3271(a) apportionable to Kansas. By virtue of this determination, other issues raised in this appeal need not be determined.

The order of the Board of Tax Appeals is reversed.

SIX, J., dissenting: I disagree with the majority's analysis of the interplay among *Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P.2d 78 (1968), K.S.A. 79-3271(a), K.A.R. 92-12-73(b), and K.S.A. 79-3289. K.S.A. 79-3289 is a legislative signal endorsing multistate uniformity (the Kansas enactment "shall be construed as to effectuate its general purpose to make uniform the law of those states which enact it"). Kansas adopted the multistate tax compact, K.S.A. 79-4301 *et seq.,* in 1967. Article IV(1)(a) of the compact defines "Business Income" as the term is defined in K.S.A. 79-3271(a) in the Uniform Division of Income Tax Purposes Act (UDITPA) enacted in 1963.

The purposes of the multistate compact, K.S.A. 79-4301, Art. I, are to:

"(1) Facilitate proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.

"(2) Promote uniformity or compatibility in significant components of tax systems.

"(3) Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.

"(4) Avoid duplicative taxation."

"The Multistate Tax Compact was developed in 1967 under the aegis of the Council of State Governments, in part at least to offset the severe criticism levelled by the Willis Committee against the widespread diversity in State apportionment and allocation methods. It became effective in 1967 on adoption by seven States; there are now 18 member States (and the District of Columbia), concentrated largely in the Midwest, the West, and the South, and in addition

there are 10 associate member States. In furtherance of the Compact's stated purpose to 'promote uniformity or compatibility in significant components of tax systems,' UDITPA is incorporated in the Compact. The Multistate Tax Commission (MTC), composed of one member from each party State, is the governing and administering agency of the Compact. It is empowered to adopt uniform regulations relating to income, capital stock, gross receipts and sales or use taxes, if two or more party States have uniform or similar provisions; these regulations are merely advisory and not binding on any State, unless it adopts them itself. The MTC is also authorized to conduct joint audits on behalf of member States requesting them, and to issue subpoenas and seek their judicial enforcement, in order to enable the Commission to examine taxpayers' books, records and other documents." Hellerstein and Hellerstein, State and Local Taxation, p. 653 (5th ed. 1988).

I agree with BOTA's discussion of the effect of K.A.R. 92-12-73(b). The point decided in *Western Natural Gas* was that income from the sale of oil and gas leases in a liquidation sale of the entire assets of the taxpayer constituted nonbusiness income. The sale of intangible personal property was taxable at the commercial domicile of the taxpaying corporation. *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, 646, 518 P.2d 453 (1974). We are not considering a complete liquidation in the case at bar. We are entitled to revisit *Western Natural Gas* to review its decisional basis in contrast to the issues currently before us.

In the case at bar, we are reviewing multistate income taxation under the policy of uniformity inherent in a uniform act. The Department of Revenue asserts that the issue is whether BOTA erred in approving the formula assignment of 6.4140% of the Chief Automotive gain to Kansas. The Secretary of the Department of Revenue is given authority to adopt rules and regulations not inconsistent with the Income Tax Act. K.S.A. 79-3236. K.A.R. 92-12-73, which sets forth the functional test for business income in subsection (b), is one of several uniform regulations adopted in Kansas in 1979. BOTA found that "many states having statutes with language identical to K.S.A. 79-3271(a) have adopted both the transactional and functional tests." K.S.A. 79-3271(a) is Uniform Act § 1(a). BOTA held that "based upon United States Supreme Court holdings, the functional test does not violate constitutional requirements." Finally, BOTA distinguished Chief's facts from those in *Western Natural Gas:*

"Even if the impact of regulations adopted subsequent to *Western Natural Gas* are overlooked, *Western Natural Gas* does not prevent a reviewing court from taking a position that a broadly-defined transactional test exists in Kansas . . . or that the functional test exists short of property disposed of in conjunction with a liquidation."

BOTA held that the second clause of K.S.A. 79-3271(a) sets out an alternative functional test for business income. The second clause states:

" 'Business income' . . . . includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Under the functional test, gain from the sale of property is business income if the property was used in the taxpayer's business operations. BOTA observed that "an entity's sale of a production equipment item or a facility used to manufacture its inventory would satisfy the functional test."

The Kansas regulations create a rebuttable presumption that income constitutes business income consistent with multistate tax compact regulations. The burden is on Chief Automotive to show that the capital gain at issue constitutes nonbusiness income.

*Western Natural Gas* approved the transactional test set forth in the first clause of K.S.A. 79-3271(a). Since *Western Natural Gas*, most of the uniform act states have formally recognized the functional test by adopting the Multistate Tax Commission (MTC) uniform regulations. The MTC Apportionment Regulations "treat gains and losses from sales or exchanges of property (tangible or intangible, real or personal) as business income 'under the functional test,' namely, 'if the property while owned by the taxpayer was used in the taxpayer's trade or business.' " Hellerstein and Hellerstein, State Taxation ¶ 9.15[2], p. 9-96 (2d ed. 1993).

K.S.A. 79-4301, Art. VII, Uniform Regulations and Forms, contemplates the adoption of uniform regulations for submission to member states. The MTC's functional test regulation IV.1.(c)15(2) was adopted in Kansas as K.A.R. 92-12-73(b) in 1979:

"Gain or loss from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while

owned by the taxpayer was used in the taxpayer's trade or business. However, if such property was utilized for the production of nonbusiness income or otherwise was removed from the property factor before its sale, exchange or other disposition, the gain or loss will constitute nonbusiness income."

*Western Natural Gas* was apparently the first decision to construe § 1(a) of the uniform act. However, the opinion contains no discussion of the legislative intent or judicial history of § 1(a). Instead, our reasoning in *Western Natural Gas* was based upon an analogy to Kansas bulk sales law and the Webster's Dictionary definition of the word "regular." Because the oil and gas leases were sold in the complete liquidation of the taxpayer, we held that the gain was not business income. Thus, *Western Natural Gas* set out the transactional test in which the crucial inquiries are the frequency or regularity of the activity. As the California State Board of Equalization explained:

"We are aware that recent decisions in Kansas and New Mexico have rejected the functional test for business income under those states' versions of the Uniform Act. (*Western Natural Gas Co. v. McDonald*, 202 Kan. 98 [446 P.2d 781] (1968); *McVean & Barlow, Inc. v. Bureau of Revenue*, 88 N.M. 521 [543 P.2d 489] (1975)). Since the Uniform Act is intended 'to make uniform the law of those states which enact it' (Rev. & Tax. Code, § 25138), these decisions are entitled to great weight in determining the proper construction of section 25120. In reaching their decisions, however, *the Kansas and New Mexico courts did not consider the fact that the Uniform Act's definition of 'business income' was derived from prior California law. Nor did they examine the uniform regulations interpreting that definition, and in fact the decisions are directly contrary to the regulations of the Multistate Tax Commission.* Under these circumstances we do not find the opinions of the Kansas and New Mexico courts persuasive and therefore respectfully decline to follow their decisions. [Emphasis added]." *Appeal of Borden, Inc.*, Cal. Tax Rep. (CCH) ¶ 205-616, p. 14, 897-59.

Most of the uniform act states have adopted the functional test through their uniform regulations, court decisions, or administrative practices. Hellerstein, ¶ 9.06 (citing CCH State Tax Guide (All States) ¶ 10-000 and P-H All States Guide ¶ 564). (25 states are indicated as having adopted the uniform act and 18 states plus the District of Columbia are listed as having adopted the compact. Kansas is on both lists.)

The interpretation of a statute by an agency charged with its enforcement is normally entitled to a great deal of judicial def-

erence. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983). In order for a court reviewing a decision by BOTA to find a lack of substantial evidence, the decision must be so wide of the mark that it is outside the realm of fair debate. *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 203, 734 P.2d 1168 (1987).

I agree with the majority that administrative regulations do not supplant statutory law or preempt judicial statutory construction. However, guided by the policy of multistate uniformity mandated by the legislature in K.S.A. 79-3289, K.S.A. 79-3271, and the multistate compact, I conclude from revisiting *Western Natural Gas* that K.A.R. 92-12-73(b) is a proper exercise of administrative authority. See K.S.A. 77-425. I would modify the *Western Natural Gas* observation, "It is not the use of the property in the business which is the determining factor under the statute." 202 Kan. at 101. The modification would recognize both the transactional and functional tests. Such a modification is justified by legislative endorsement of the multistate compact, the legislative policy of uniformity, and multistate income tax uniformity developments occurring since our opinion in *Western Natural Gas* 26 years ago.

LOCKETT and DAVIS, JJ., join the foregoing dissenting opinion.